ROBERT DUNHAM *et al.*, Plaintiffs-Appellees, *v.* GEORGE DANGELES, Defendant-Appellant.

First District (1st Division)    No. 77-780

Opinion filed December 11, 1978.

Jerome Goldberg, of Chicago, for appellant.

Barry D. Bayer and Vance L. Liebman, both of D'Ancona, Pflaum, Wyatt & Riskind, of Chicago, for appellees.

Mr. JUSTICE BUCKLEY* delivered the opinion of the court:

This appeal concerns an action brought by Robert Dunham, William Rosdil and Haiges Machinery, Inc., for damages for breach of two contracts with George Dangeles. The first contract was an agreement to sell a clothes cleaning business to Dunham and Rosadil; the second was an agreement to pay Haiges a broker's or finder's fee upon completion of the sale for locating these buyers. Judgment in the Cook County Circuit Court was entered on January 27, 1977, for plaintiffs; defendant Dangeles appeals.

On appeal Dangeles contends that the trial court erred in finding that the plaintiffs had tendered performance under the contract because their complaint did not so allege; they did not tender $3,000 as down payment,

---

* This opinion was prepared by Justice Buckley while assigned to the Illinois Appellate Court, First District.

but merely notified defendant through a broker that they had obtained financing and proposed closing at some future date; and their proposal for closing called for the defendant to bring a bill of sale and a copy of a new lease, whereas the sale agreement did not specify that such documents would be necessary for such a closing.

For the reasons stated below, the judgment of the circuit court is affirmed.

The first contract in question is an agreement by Dangeles to sell his cleaning business to Dunham and Rosdil for $10,000, with $3,000 as down payment and the remainder paid in 48 monthly installments. That document provided that "Mr. Dangeles agrees to transfer and assign present lease," and that the new owner "will assume new lease." It also provided that Mr. Dangeles guaranteed clear title to the equipment included in the sale "upon completion of 48 monthly payments," and that the buyers entered into the agreement on the condition that they obtain suitable financing, in return for which they gave Dangeles $500 as earnest money. Dangeles agreed to return this $500 and consider the agreement void "[i]f within 30 days Mr. Dunham and Mr. Rosdil cannot obtain suitable financing."

The second contract was an agreement by Dangeles to pay $1,000 as a finder's fee to Haiges Machinery, Inc., when Dunham and Rosdil purchased the business, payment to be made by remitting the first several monthly installment payments under the contract for sale of the business.

Both documents were prepared by William Haiges, president of Haiges Machinery, Inc., and were mailed by him, together with the buyers' check for $500, to Dangeles, who signed them on September 7, 1972. The contract for sale of the business was signed by the buyers on August 28, 1972.

Haiges testified that he and Dangeles conversed by telephone in mid-September, and that he told Dangeles that Dunham and Rosdil had obtained the necessary financing. Dangeles' testimony on this point was that Haiges, when asked to deliver the remaining $2,500 in down payment, stated he did not have the money, but that it would be forthcoming.

On or about September 30, 1972, Dangeles sent the earnest money back to Haiges. On October 2, Haiges returned it, along with a letter stating that, as he had previously stated by telephone, the buyers had obtained financing and were ready, willing and able to consummate the purchase. He proposed a closing on October 16, 1977, and asked that Dangeles forward for review the necessary documents, including "bill of sale," and "copy of new lease."

Dangeles refused to attend the proposed closing, and the present

action was filed. On January 27, 1977, the cause was tried in Cook County circuit court without a jury, and that day an order of judgment was entered awarding Dunham and Rosdil $402, and Haiges Machinery, Inc., $1,000 in damages.

The threshold question presented on appeal is whether plaintiff's complaint stated a cause of action for breach of contract. Dangeles argues on appeal that the complaint upon which this action was based was fatally defective in that it failed to allege with particularity that plaintiffs had performed their obligations under their contract with Dangeles. This contention was raised at trial as part of a motion for dismissal at the end of plaintiff's case.

■■ Supreme Court Rule 133(c) states that, in pleading performance of a condition precedent in a contract, it is sufficient to allege generally that the party performed all conditions on his part, Ill. Rev. Stat. 1975, ch. 110A, par. 133(c), thus suggesting that a general allegation to this effect is appropriate. However, it is well established in Illinois that pleading over to a complaint that defectively states a cause of action constitutes a waiver of any such defect. *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826; *Harry v. Harry* (1976), 38 Ill. App. 3d 776, 349 N.E.2d 69.

Accordingly, even if Supreme Court Rule 133(c) were viewed as requiring a general allegation of performance of a condition precedent, Dangeles' pleading over to plaintiffs' complaint constituted a waiver of any such defect.

Dangeles' second contention is that the plaintiffs failed to tender performance such as would require his own performance in that they did not tender the full amount of down payment within the time set by the contract. It is first useful to consider the time requirements of the agreement in question.

■■ Dangeles states that Dunham and Rosdil executed the sale agreement on August 28, so that the 30 days under that agreement expired on September 28. However, Dangeles admits he executed that document on September 7. In argument Dangeles has not contested plaintiffs' description of that document as a contract, rather than a memorialization of a prior oral agreement. Accordingly, the rule of law that an offer of a contract is effective upon acceptance is applicable, so that the 30-day period provided under the contract began on September 7, when Dangeles accepted the offer of Dunham and Rosdil by executing that document.

As a result, both Dangeles' mid-September conversation with Haiges and Haiges' letter of October 2 are relevant in determining whether performance was tendered by plaintiffs. Regarding the mid-September conversation, testimony varied, but was not contradictory. Dangeles said

Haiges told him that he (Haiges) did not have the money, but that it would be forthcoming. Haiges said he told Dangeles that Dunham and Rosdil had obtained financing. Accordingly, both versions of that conversation may be believed and viewed as consistent.

Haiges' October 2 letter conveyed basically the same message as Haiges said the mid-September conversation conveyed, but also contained a proposal for an October 16 closing at which Dangeles would be expected to bring certain documents.

Dangeles' argument consists of two points, first that the information provided did not constitute a tender of performance in that only a tender of $3,000 could constitute a tender of performance, and second, that the additional matter contained in the letter of October 2 constituted an attempt to amend the earlier sale agreement, and therefore that letter could not constitute a tender of performance under the original agreement.

■■■ Turning first to Dangeles' contention that only a tender of the full down payment could constitute a tender of performance, it is clear that the sale agreement does not explicitly cover this point. However, if an agreement's terms are not clear, it will be given a reasonable construction (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272), and under the facts of the present case it was clearly reasonable for plaintiffs to tender performance by conveying notice of their readiness to perform through Haiges, who had been the intermediary for previous communications between buyers and seller. To construe the agreement to require actual tender of money to Dangeles without the formality of a closing and reciprocal tender of some form of document indicating ownership would be patently unreasonable. Absent an express provision to the contrary, when a contract calls for acts by both parties to be done at the same time, only an expression of readiness, willingness and ability to perform is needed to constitute a tender of performance (*Ladd v. Cochran & McCluer Co.* (1934), 274 Ill. App. 427).

As to the language in Haiges' October 2 letter calling for Dangeles to forward for review a bill of sale and a new lease, it is first of all not clear from the wording of that letter that plaintiffs were insisting on such documents in a particular form as a prerequisite to their performance.

Second, although Dangeles' position is that the agreement among the parties did not call for transfer of title upon sale, nor provide for delivery to the buyers of a separate lease without Dangeles as a party, nothing in that agreement suggests that a bill of sale and a "new lease" would not be provided. On the contrary, the agreement expressly provides for a "new lease," and although it conditions transfer of "clear title" upon completion of 48 monthly payments it cannot be construed as

prohibiting transfer to the buyers of some documentary recognition of the fact that they have made the required down payment and have begun making monthly payments and assumed control of the business. The vague term "bill of sale" suggests nothing more than such a documentary recognition of the buyers' status upon delivery of the required down payment, (Black's Law Dictionary 211 (4th ed. 1968)), and therefore a proposal that Dangeles provide such a document for the closing was not only consistent with the agreement of the parties, but also was a reasonable, implied term of that agreement.

Accordingly, Dunham and Rosdil made a timely tender of performance under the contract.

For these reasons, Dangeles' arguments on appeal are without merit. The judgment of the circuit court is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.