In the Matter of SMITH JONES, INC.,
SJC Corporation, and Frigiking,
Inc., Debtors.

Bankruptcy Nos. 4–81–568, 4–81–1871
and 4–81–1872.

United States Bankruptcy Court,
D. Minnesota,
Fourth Division.

Nov. 29, 1982.

Steven B. Nosek, Minneapolis, Minn., Gary Greene, Thomas G. Barry, Jr., Minnetonka, Minn., Larry B. Ricke, Minneapolis, Minn., for Smith Jones, Inc.

Robert J. Tennessen, Minneapolis, Minn., for Smith Jones, Inc., William E. Kingswell, Inc.

Willard L. Wentzel, Jr., Minneapolis, Minn., for Wileo Plumbing & Heating Supply Co.

Thomas H. Bennin, Minneapolis, Minn., for Kings Highway Mobile Industries, Inc.

Miggie E. Cramblit, Fridley, Minn., for Climate Control Corp.

David C. Beman, Minneapolis, Minn., for Consolidated Industries, Hajoca Corp., National Mills, Inc.

Paul J. Scheerer, Minneapolis, Minn., for Progressive Wholesale, Langendorf Supply.

James H. Levy, St. Paul, Minn., for Vamac, Inc.

Rolfe A. Worden, Minneapolis, Minn., for Gruber Supply Corp.

Robert G. Share, Minneapolis, Minn., for Graybow-Daniels Co. and Capitol Supply Co.

Edward B. Silberman, Minneapolis, Minn., for Flame Air, Inc., Phoenix Wholesale, Inc., Heating & Air Conditioning and Plumbing Supply, Inc.

Lorna P. Gleason, Minneapolis, Minn., for Air Cold Supply Co., R.E. Micheal Co., Noland Co.

William I. Kampf, Elizabeth L. Zerby, St. Paul, Minn., for Standard Supply Co., Inc.

W. Scott Davis, Lincoln, Neb., for Capitol Supply Co.

David W. Evans, Minneapolis, Minn., for Eckstein Co., Woodson & Bozeman, Inc., Varner Supply.

## MEMORANDUM ORDER

KENNETH G. OWENS, Bankruptcy Judge.

After notice as prescribed by the court, a hearing was held in this consolidated proceeding under Chapter 11 of the Bankruptcy Code on the debtors' application for rejection of executory contracts. The appearances on behalf of and in opposition to the application are as stated in addendum hereto.

The debtor, pursuant to 11 U.S.C. Section 1107(a), armed with the powers of a trustee, seeks to reject certain executory contracts of warranty pursuant to 11 U.S.C. Section 365(a) so as to effect a breach of such contracts effective "immediately before the date of the filing of the petition". (11 U.S.C. Section 365(g)(1)).

"*Section 365. Executory contracts and unexpired leases*

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.  * * *

"(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

"(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition; or * * * * "

## THE WARRANTIES

The debtor is a conglomerate of enterprises which, prior to commencement of this case, acquired from the Tappan Company a building and manufacturing facility in Elyria, Ohio, in which it manufactured furnaces and air conditioners for sale through distributors and others. In connection with such operation, it issued certain limited written warranties to accompany the product into the hands of the ultimate purchaser. It essentially provided that for a period of time, varying as to the particular product and part, that replacement parts would be made available or provided for those becoming defective. Collateral to such warranties, the debtor made provision in its contractual arrangements with numerous distributors of product for processing warranty claims and supplying replacement parts.

The warranty, as material here, principally relates to the replacement of heat exchangers and heating elements in furnaces and replacement of defective compressors in air cooling units. The warranty purports to be in lieu of all other warranties, but the validity of that provision is not an issue at this time. The application of the debtor seeks only to reject or invalidate the precise warranties extended by the writing and does not seek any such relief with respect to obligations of an implied, or imposed by law, nature incident to the production and sale of the primary products. Accordingly, even if the written limited warranties be rejected, other types of obligations and responsibilities incident to sale may remain. The debtor also has conceded that its present application is not intended to affect any of its contractual relations with its distributors. Accordingly, its intended effect is to be isolated solely to its written contractual warranty accompanying the product into the hands of the ultimate user.

## THE NOTICE OF HEARING

■ There is no complete or adequate documentation of the individuals to be affected by any action with respect to the warranties and, accordingly, application was made to this court seeking a definition of an appropriate notice under the circumstances. The court determined that the most adequate notice would encompass mailing to the some 3,600 entities revealed in the schedules and for publication of notice in newspapers and trade journals in the broad areas of product distribution. Notice was accordingly published in many newspapers having general circulation and in two trade journals. Included in the newspaper coverage is publication in several newspa-

pers known to the court to have a very broad, general regional circulation. The publications were accomplished as provided in the court's order and, in the court's view, constitute a sufficient notice under the circumstances.

## ARE THE CONTRACTS "EXECUTORY"?

█ It is evident that an "executory" contract is one under which some further performance is due. Any further refinement of definition is, of course, a mere gloss on the statutory term. Among other things, it is well recognized that where all elements of performance have been accomplished, leaving only an obligation for the payment of money, the contract is not executory within the meaning of the statute. Such a contract then entails a mere debt, and such debt was claimable both under the former Bankruptcy Act and under the present Bankruptcy Code. The liability to pay money on the part of the debtor constitutes a liability which becomes present and any other express time of performance immaterial because the Act and the Code accelerate such liabilities. The present warranties require other performances than the payment of money and so they are not disqualified on that theory.

It is sometimes said that to qualify as an executory contract there must be some further performance to be rendered by each party so that such remaining obligations are bilateral in nature. The essence of that concept is that there be a bilateral involvement in the full performance of the contract.

█ In the present case, the obligation of the debtor to supply replacement parts as failures may occur constitutes a future commitment and is in itself executory until performed. That obligation to supply replacements for defective parts, however, is conditioned upon the occurrence of certain events and compliance on the part of the user with certain conditions as to use. The warranty provides, for example, that it should be voided if the unit involved is not installed and operated in accordance with directions and recommendations, that in-

compatible components or accessories have not been used with or attached to the unit, that the user has in some manner abused or failed to maintain the unit or has removed it from its place of original installation, or that the defect or damage complained of was not caused by the manufacturer. All of these performances or conditions, while outside the obligation of the debtor, must be responded to by the ultimate consumer or user. While the obligations of the consumer or user are not absolutely promissory on the part of the user, they nevertheless constitute conditions which lie within the effective control of the user and a substantial failure of such conditions would constitute a material breach and clearly excuse performance of the warranty. In this situation, there is a bilateral involvement of the parties which in its essentials complies with the requirement that the contract be "executory".

There is little authority to guide this court in making the determination that such "warranties" of the nature present in this case fall within the definition of executory contracts. The court does know, however, that such warranties have been effectively rejected in at least one case in this district. The debtor in *In Re Arctic Enterprises, Inc.,* filed February 11, 1981, in the Third Division of this District of Minnesota, Case No. 3–81–0280, in its plan of reorganization rejected as executory contracts, so describing them, its warranties relating to snowmobiles manufactured and sold by debtor. The plan of reorganization was confirmed by the court on December 4, 1981, and pursuant to the Code, became binding on all interested parties.

## ADEQUACY OF GROUNDS FOR REJECTION

While the right to reject executory contracts is conditioned by the Code on the "court's approval", it provides no further express guidelines.

█ In case law developed under the former Bankruptcy Act, the issue of rejection of contracts and leases was considered to be

related and to present the same problem as the abandonment of property. Accordingly, it was said that rejection was not appropriate unless the executory contract, or more generally the executory lease, was "onerous" or "burdensome" to the estate or to the debtor. Such a requirement may be no longer required under the Bankruptcy Code. 2 Collier on Bankruptcy, para. 365.03 at 365–18 (15th Ed., 1982). If it is a requirement, that situation exists in the present case as demonstrated in the testimony of the debtors' corporate officer, Gary L. Greene, offered at hearing in support of the motion. No participant in the hearing questioned the burdensome effect of the warranties, particularly in view of the fact that the debtor has already liquidated its manufacturing and distribution facility with respect to the furnaces and air conditioning equipment and lacks the practical means of maintaining an inventory of parts or providing for availability or distribution.

The courts found particular instances under the Bankruptcy Act where a contract or lease, while not actually burdensome to the debtor, prevented the debtor from entering a more advantageous arrangement. In those cases, the courts recognized a test related to appropriate "business judgment". *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959. See Collier, supra, at p. 365–14 et seq. In the present case, the testimony of Mr. Greene supports the action of the debtor as being an exercise of good business judgment. No participant in the hearing questioned such a conclusion.

■ While not clearly expressed otherwise, another test has been applied, that of an equitable balancing of the relative benefits and detriments both to the debtor and to the other affected party. An example is found in situations both under the Act and under the present Bankruptcy Code where debtors attempt the abrogation of collective bargaining agreements. Collier, supra, p. 365–16, 17. It has been pointed out, however, that the broadened definition of claim and the express authorization to effect estimation with respect to claims may, in collective bargaining situations, substantially reduce the burden thought to occur on workers by reason of a rejection. Collier, supra, p. 365–17. In any event, I am satisfied that this being a court of equity, the court is obliged to measure the relative effects of rejection.

If the warranties be rejected and the rejection approved, the ultimate consumer or user of these warranted products will not be able to rely on an express contractual basis when seeking replacement parts. That is the outer limit of effect, for there is no intention here to deprive the ultimate consumer or user from any remedies with respect to defective parts founded on common law, statute, or fault. While the result is an injury or the prospect of an injury in the future, and perhaps of minimum effect, it must nevertheless be considered. In aider of that, some consideration should be given to the nature of a "claim" in a reorganization context. Under the Bankruptcy Act, the assertion of a claim was dependent upon the existence of a debt. Among the reforms effected by the Bankruptcy Code was a vast expansion of concept of claim and, by definition under the Code, the concept is sufficiently broad to cover any possible obligation.

"11 Section 101

"(4) 'claim' means—

"(A) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or * * * "

"11 Section 502

"(c) There shall be estimated for purpose of allowance under this section—

"(1) any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case; or

"(2) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."

The extension of the remedy of estimation found in 11 U.S.C. Section 502(c) tends to further lighten any burden resulting to the adverse party on the rejection of a contract. See Collier, supra, p. 365–17.

Where the occurrence or event subject of the warranty occurred prior to the filing of the petition, it would clearly appear that the consumer or user is a proper claimant having a claim within the definition of the Code. In those instances where the event had not yet occurred, it would appear that, to the extent sustainable, the consumer or user would, under the very broad definition of the Code, have an accelerated claim and would be an appropriate claimant under the Code. As previously indicated, the rejection of the contract is a "breach" and assertable as if such breach had occurred immediately prior to the filing of the petition. Accordingly, it is entitled to participation if the conditions of the warranty have been met, and the resultant damage resulting from a failure to find available the appropriate part is subject to or capable of estimation.

## THE BALANCE

Since the debtor has demonstrated that the continued obligation under the express contractual warranties is burdensome and that a proper exercise of business judgment dictates rejection, it has met the two principal requirements articulated in existing case law. This court has concluded that on a proper balancing of equities, that is the respective burdens and benefits, the debtor has demonstrated a proper basis for rejection.

If the right to damages is equivalent to the expectation of performance, the consumers or ultimate users will suffer no loss. In effect, the only harm is caused by acceleration. If rejected, the contract forms no predicate for either debtor or user to await the occurrence warranted against. The test of damage is accordingly an accelerated and an immediate one. As indicated, if the conditions can be shown to exist for the claim of warranty other than in a merely speculative fashion, the broad definitions of

the Bankruptcy Code provide the resulting damages may be the subject of a claim and its holder, a claimant.

By reason of rejection, the user or consumer will suffer an acceleration in the determination of its rights, for that is the only apparent effect of a subsisting contract. It has already been indicated that the definition of claim in the Code which includes a right to payment whether "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," taken together with the availability of estimation is so broad that it may not exclude the assertion of an immediate claim provided only that it be not purely speculative and that it be unconditioned. On a literal interpretation of the Code, even without rejection, the holder of the warranty might also be the holder of a presently assertable claim, and that being the measure of its participation in the reorganization case. It is not necessary, however, to go so far, for in any event the rejection of the contract results, absent pure speculation, in the existence of a present claim. That is sufficient to lessen the detriment to the consumer or user to an extent that a balance of the equities and burdens justifies rejection here of the contractual written commitments, the continuation of which is unquestionably burdensome to the debtor and contrary to the implementation of a proper business judgment.

## ACCORDINGLY, IT IS ORDERED:

1. The debtors' application for an order authorizing the rejection of the written executory contracts of product warranty described in the application and herein is granted and the same are deemed rejected.

2. The debtor shall effect notice hereof by mailing copies to all parties appearing at the hearing held on July 21, 1982, to all those parties or entities who have made written responses to the application, and to all known dealers or distributors of its affected product and to any affected consumer or user known to debtor included within the list of creditors on file in this case.

3. Additionally, the debtor within two weeks shall formulate and present to the court a proposal with respect to the form and manner of notice to any other consumer users of the fact of rejection and time within which any resulting claim shall be filed, together with an appropriate form of order.