**In re Pajazit MURTISHI and Mubera Murtishi, Debtors.**

**Bankruptcy No. 85 B 7753.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 3, 1985.

Sansonetti & Papadia, Ltd., Chicago, Ill., for Andrew and Andrianne Karamitos.

DiLeonardi & Broihier, Ltd., Des Plaines, Ill., for Wm. L. Kunkel & Co.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter was heard upon the motion of the debtors in possession, Pajazit Murtishi and Mubera Murtishi ("debtors"), to reject two contracts, a real estate sales contract and an exclusive listing agreement, pursuant to 11 U.S.C. § 365. For the reasons set forth below, the court concludes, as the respective non-debtor parties to each contract contend, that the contracts are no longer executory and are therefore not subject to the rejection provisions of 11 U.S.C. § 365.

## BACKGROUND

On April 4, 1985, the debtors executed a real estate sales contract wherein they accepted an offer by Andrew. Karamitos and Andrianne Karamitos ("vendees") to purchase debtors' residence located in Des Plaines, Illinois for $115,600. The contract required the vendees, inter alia, to remit $5,000 earnest money and to secure a mortgage commitment within 45 days of debtors' acceptance. At the closing, designated in the contract to be held June 3, 1985, debtors were obligated to execute and deliver a warranty deed to vendees upon payment of the balance of the purchase price. On or about May 6, 1985, debtors informed vendees that they no longer wished to sell their property. Nevertheless, vendees reaffirmed their desire to proceed with the sale. On June 3, 1985, the debtors defaulted on the contract, refusing to convey title to the vendees who, having acquired the requisite financing, contend they were in a position to close on the purchase of debtors' property at that time.

The foregoing sales contract resulted from an exclusive listing agreement executed on March 24, 1985 by the debtors and Wm. L. Kunkel & Co. ("brokers"), a real

Brodsky & Associates, Chicago, Ill., for debtor.

estate brokerage firm, whereby brokers were granted the exclusive right to act as agent for the sale of debtors' home through March 24, 1986. The agreement further entitled the brokers to a commission in the event brokers provided a ready, willing, and able purchaser for debtors' property whether or not the property was actually sold.

On June 19, 1985, debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, on August 13, 1985, debtors presented their motion to reject the aforementioned contracts, stating that it was no longer in their best interest to sell their residence. Debtors contend that a contract to sell real property is executory where the deed has not been delivered and the purchase price has not been paid in full. Further, since the home has not in fact been sold, debtors argue that their contract with the brokers is also executory. Therefore, debtors desire to reject these contracts under section 365 of the Bankruptcy Code.

Vendees reply that the real estate sales contract has ceased to be executory since vendees have performed all that is required of them under the terms thereof. Vendees further contend that the debtors have sought relief under Chapter 11 solely to reject this contract. Brokers urge that the exclusive listing agreement is not an executory contract since, by producing a ready, willing, and able purchaser under debtors' terms on April 4, 1985, brokers had fully and completely performed their duties and obligations thereunder.[1]

## DISCUSSION

■ Section 365(a) of the Bankruptcy Code provides in relevant part:

... [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Further, Section 1107(a) of the Code vests the rights, powers and duties of a Chapter 11 trustee in a debtor in possession. It is clear that the threshold determination under section 365 with respect to the propriety of rejection by a trustee or debtor in possession is whether the contract in issue is executory.

Executory contracts are nowhere defined in the Code. However, the legislative history to section 365(a) states:

. . . . .

Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.

H.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977) *reprinted in* U.S.Code Cong. & Admin.News 5963, 6303 (1978); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 58 (1978) *reprinted in* U.S.Code Cong. & Admin. News 5787, 5844 (1978). Professor Countryman formulated a definition of an executory contract, which has since been widely accepted, as "a contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, "Executory Contracts in Bankruptcy: Part I," 47 Minn.L. Rev. 439, 460 (1973). *See, e.g., Matter of*

---

1. In their objection to debtors' rejection of the exclusive listing agreement, brokers have also sought to have their claim allowed in the amount of $7,436.00 which represents the commission earned. Brokers cite established Illinois law that a broker is entitled to a commission once it produces a ready, willing and able buyer under seller's terms. In their reply, debtors do not dispute brokers' entitlement to the commission but correctly point out that the claim for commission is a separate matter. Since the court concludes that the exclusive listing agreement may not be rejected by the debtors herein, brokers' claim for commission, upon due filing, will be determined and paid in accordance with the provisions of the Bankruptcy Code.

*Chicago, Rock Island & Pac. R. Co.*, 604 F.2d 1002, 1004 (7th Cir.1979). Bankruptcy courts have grappled with the meager guidance of the foregoing with the result that "much has been written and little concluded about what constitutes an executory contract." *In re G–N Partners*, 48 B.R. 462, 465 (Bankr.D.Minn.1985). In attempting to reconcile the approaches taken by bankruptcy courts confronted with rejection of executory contracts, all that appears conclusive is that each court must and does undertake an independent analysis of the particular contract in issue and applies standards more flexible than those under contract law in order to aid a debtor's rehabilitation efforts. *In re Richmond Metal Finishers, Inc.*, 34 B.R. 521, 523 (Bankr.E.D.Va.1983). The results reached often appear to be measured in terms of the consequences of applying section 365, i.e., benefit to the estate and the protection of creditors, rather than in terms of any clear cut principles as to whether a contract is executory or not. *See In re Booth*, 19 B.R. 53, 56–57 (Bankr. D.Utah 1982).[2]

■ Initially, a court faced with a motion to reject an executory contract pursuant to section 365(a) should focus on the situation where both the debtor and the other party to the contract have significant obligations to perform under the contract *at the time the petition is filed*. R. Ginsberg, Bankruptcy, ¶ 7002 (1985) (emphasis added). If performance no longer remains due on either side at the time the petition is filed, neither the court nor the trustee is confronted with an executory contract that can be rejected in bankruptcy. *See Matter of Newcomb*, 744 F.2d 621, 624 (8th Cir.1984). In *Matter of Chicago, Rock Island & Pac. R. Co.*, 604 F.2d 1002 (7th Cir.1979) the Court of Appeals for the Seventh Circuit noted that "[s]emantically a contract executory in whole or in part could include the debtor or bankrupt's unperformed obligation under a contract fully performed by the other party" but that such a construc-

tion would permit a trustee to repudiate accrued obligations. *Id.* at 1003–1004. In the *Rock Island* case, the court concluded that a contract fully performed by the non-debtor party is not deemed executory by reason of the fact that the debtor has not performed and, therefore, may not be rejected by the trustee. *Id.* at 1004.

■ Taking this reasoning a step further, when the debtor has not only failed to perform but has breached the contract prepetition with the result that the other party has no further duty to perform but rather holds a claim against the debtor, the contract is no longer executory for purposes of section 365. This conclusion follows logically upon considering the effect of rejection of an executory contract under the Code. Section 365(g) provides in relevant part:

> Except as provided in subsection (h)(2) and (i)(2) of this section, the rejection of an executory contract ... constitutes a breach of such contract ...
>
> (1) if such contract ... has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition;

. . . . .

The legislative history to section 365(g) states that its purpose is to treat rejection claims as pre-petition claims. H.Rep. No. 95–595, 95th Cong., 1st Sess. 349 (1977); *reprinted in* U.S.Code Cong. & Admin. News, 5963, 6305 (1978); S.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978) *reprinted in* U.S.Code Cong. & Admin.News, 5787, 5846 (1978). Rejection effects a breach as of immediately before the petition was filed leaving the non-breaching party to seek allowance of a claim under section 502 as a general unsecured creditor. 2 Collier on Bankruptcy ¶ 365.08 (15th ed. 1985). Section 502(g) in particular provides:

> A claim arising from the rejection ... of an executory contract or unexpired lease

---

**2.** The Court notes that the debtors in this case have failed to demonstrate how rejection of either contract would produce a substantial eq-

uity for creditors, although such a showing should not change the holding herein, due to the occurrence of the pre-petition breach.

of the debtor that has not been assumed shall be determined, and shall be allowed under ... this section or disallowed under ... this section, the same as if such claim had arisen before the date of the filing of the petition.

In sum, the effect or purpose of rejection of an executory contract, in addition to relieving the debtor of burdensome future obligations while trying to recover financially, is to breach the contract and make the non-debtor party a creditor of the estate. *In re Norquist,* 43 B.R. 224, 225 (Bankr.E.D.Wash.1984). Therefore, if the non-debtor party's claim has in fact arisen pre-petition due to debtor's breach, there is no need for either section 502(g) or section 365(g) to thereby create a breach and make the other party a creditor. Rejection would not further the Code's objectives in such a situation. As articulated by the 6th Circuit Court of Appeals in *In re Jolly,* 574 F.2d 349 (6th Cir.1978):

> The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory....

*Id.* at 351.

■ It is not deemed an abuse of the bankruptcy process to file a Chapter 11 petition solely to reject an executory contract. *In re Bofill,* 25 B.R. 550, 552 (Bankr.S.D.N.Y.1982). Nevertheless, good faith debtors obligated under a contract in a situation similar to the case *sub judice* should find themselves in no better position under the bankruptcy laws than if they had pursued alternative remedies, e.g., an action for recission or reformation, in state court. *See In re Marina Enterprises, Inc.,* 14 B.R. 327, 330 (Bankr.S.D.Fla.1981). To allow a debtor to reject a contract breached pre-petition would be tantamount to sanctioning the operation of section 365 as a treasure trove for such a rejecting debtor. *Id.* This court concludes that the

rejection provisions have no applicability to a contract which has already been breached at the time debtor's petition is filed. *See Consolidated Oil & Gas, Inc. v. Sun Oil Co., etc.,* 16 B.R. 490 (D.Colo.1981); *In re Jolly,* 574 F.2d 349 (6th Cir.1978); *But see, In re Alexander,* 670 F.2d 885 (9th Cir.1982). Just as a bankruptcy court cannot resurrect a lease which has been terminated pre-petition, *see In re Maxwell,* 40 B.R. 231, 236 (N.D.Ill.1984), a trustee or debtor in possession cannot resurrect a contract which has been breached pre-petition and thereafter attempt to reject it.

■ With respect to the real estate sales contract herein, the effect of debtors' positive and unequivocal notification to vendees on May 6, 1985 that they no longer intended to perform under the contract on June 3, 1985 operated as an anticipatory repudiation. *B & C Electric Co., Inc. v. Pullman Bk. & Trust Co.,* 96 Ill.App.3d 321, 328, 51 Ill.Dec. 698, 421 N.E.2d 206 (1st Dist.1981). Thereafter, the vendees could elect to treat the repudiation as a breach, putting an end to the contract for all purposes of further performance, or attempt to keep the contract in force by awaiting the time for debtors' performance. *Builder's Concrete v. Faubel & Sons, Inc.,* 58 Ill.App.3d 100, 104, 15 Ill.Dec. 517, 373 N.E.2d 863 (3d Dist.1978). The vendees chose the latter course although this did not constitute an irrevocable election not to treat the renunciation as a breach. *Id.* at 105, 15 Ill.Dec. 517, 373 N.E.2d 863. Debtors subsequently breached the contract pre-petition on June 3, 1985, despite vendees' tender of performance, i.e., a readiness, willingness, and ability to perform. *Dunham v. Dangeles,* 67 Ill.App.3d 252, 256, 23 Ill.Dec. 929, 384 N.E.2d 836 (1st Dist.1978). At the time this Chapter 11 case was filed, debtors no longer had an obligation to do anything in the future. Debtors' duty was in the past and they breached that duty. *See In re Jolly, supra,* 574 F.2d 349. In addition, vendees had materially performed. Therefore, the real estate sales contract was not "executory" within the meaning of the Bankruptcy Code.

As to the exclusive listing agreement, the primary objective to be attained was the production of a single purchaser and such objective was attained upon brokers' producing ready, willing and able purchasers on the debtors' terms. *See Hunt v. Judd,* 225 Ill.App. 395, 398 (1922). At the time of filing, brokers had fully performed under this contract and debtors' only remaining obligation was to pay the brokers' commission. It is well established that where all the elements of performance have been accomplished leaving only an obligation to pay money, the contract is not executory within the meaning of the statute. *See, e.g., Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043, 1046 (4th Cir.1985); *Matter of Smith Jones, Inc.,* 26 B.R. 289, 292 (Bkrtcy.D. Minn.1982). Therefore, the exclusive listing agreement was not executory at the time the debtors' Chapter 11 petition was filed.

IT IS THEREFORE ORDERED that, since the aforementioned contracts in issue were not executory contracts as of the time of filing, debtors' motion to reject the contracts under section 365(a) is denied.