**In re W. & L. ASSOCIATES, INC., Debtor.**

**Bankruptcy No. 86–04999S.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 6, 1987.

Extension of Time for Appeal Denied June 18, 1987.

Jonathan A. Ganz, Gary R. Kozik, Philadelphia, Pa., for debtor.

Mark I. Bernstein, Norman S. Berson, Philadelphia, Pa., for the buyer.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Resolution of the Motion before us causes us to consider some of the most basic issues relevant to 11 U.S.C. § 365, that section of the Code addressing "Executory contracts and unexpired leases," which we have also touched upon in our two recently-filed Opinions, *In re Grant Broadcasting of Philadelphia, Inc.* (Fourth Opinion), 71 B.R. 891 (Bankr. E.D.Pa.1987); and *In re Sudler, Sudler v. Chester Housing Authority,* 71 B.R. 780 (Bankr.E.D.Pa.1987).

We are inclined to interpret § 365 broadly, at least in a debtor's behalf, and therefore decline the non-debtor party's invitation to classify this contract as one wholly performed on one side, and hence not "executory." We also hold that the applicable "business judgment" rule allows the debtor wide latitude in determining what in fact serves its best interest and when to reject an executory contract. We also fail to find that the Debtor here has acted in "bad faith," which we believe is a concept which should not be used as a license to moralize on the conduct of, or second-guess, a debtor.

Therefore, we hold that the Agreement of Sale of the realty of the Debtor in issue here is an "executory contract," despite the Buyer's arguments that he (the Buyer) fully performed his obligations prior to the bankruptcy filing. We also hold that the Debtor's bankruptcy filing, even if primarily to extricate itself from this contract, was not in "bad faith," such that dismissal of either this Motion or the case is in order. Finally, the very fact that the Buyer so vigorously seeks to hold the Debtor to this contract convinces us that it is a wise "business judgment" of the Debtor to attempt to reject the Agreement of Sale contract.

On October 28, 1986, the corporate Debtor, which lists as its sole business the ownership of a parcel of vacant land located at 616–24 South 7th Street, Philadelphia, Pennsylvania 19147, filed this Chapter 11 corporate reorganization. The Debtor's principal, William Cicalese, testified that this parcel of land is contiguous to a family-owned business, Chick's Bar and Backroom Cafe, and is used for parking for patrons of this establishment and neighboring businesses.

Shortly after the bankruptcy filing, on November 10, 1986, the Debtor filed the "Motion to Reject Agreement of Sale with Richard Zoghibe [sic]" which is before us for decision. On December 2, 1986, Richard Zeghibe (hereinafter referred to as "the Buyer") answered and opposed the Motion.

After two continuances by agreement of the parties of the hearing on this Motion, the matter came before us for trial on January 28, 1987. Unfortunately, on that date, we had an extremely long list of cases, and we were unable to try the case that day despite the wish of both parties that we do so. We therefore rescheduled the trial for February 12, 1987, and issued a Pre-Trial Order of February 2, 1987, which we hoped would assist both the parties and us in making a record and honing in on the pertinent legal issues. Although we must express some disappointment with counsel for the Debtor in his performance,[1]

---

1. In our Pre-Trial Order, we requested the parties to identify all witnesses to be called and pre-mark all exhibits to be offered into evidence. As it developed, the Debtor called, as its first witness, an expert real estate appraiser, Thomas M. Descano, whose written appraisal had not been submitted to the Buyer's Counsel prior to trial. This caused a considerable delay in the trial, while the Buyer's Counsel studied the appraisal prior to cross-examination. Also, we asked both parties to submit Findings of Fact, Conclusions of Law, and a Trial Brief on

or before February 10, 1987, and we received no Brief from the Debtor.

We issue such Orders sparingly, only in those cases where it appears to us that pre-trial submissions will assist both the parties and us in resolving disputes. Because the Buyer did not press for same and we recognized that our Order here did not give the Debtor very much time to produce his submissions, we are not imposing any sanctions upon the Debtor's Counsel in this case. We do, however, intend to do so if

we believe that the Order did serve this purpose.

The only witnesses called were Thomas M. Descano, an appraiser, and Mr. Cicalese, on behalf of the Debtor. The Buyer presented no witnesses. By Order of February 13, 1987, we directed the parties to file Briefs at one-week intervals after preparation of the Notes of Testimony. Very helpful Briefs were produced by both the Debtor and the Buyer on March 9, 1987, and March 17, 1987, respectively.

Because we perceive this matter to present almost exclusively issues of law, we shall not designate specific Findings of Fact as such, but shall prepare our Opinion in narrative form. *See In re Campfire Shop, Inc., Barone v. Strouse, Greenberg Mortgage Co.*, 71 B.R. 521, 524–25 (Bankr. E.D.Pa., 1987). The parties agree that, on May 11, 1986, the Debtor contracted to sell the realty in issue to "Richard Zoghibe [sic] or Nominee" for $251,750.00. Settlement was postponed by agreement of the parties until September 24, 1986, when the Buyer appeared to settle and the Debtor failed to do so. The Buyer deposited a check in the amount of $270,000.00 with the settlement agent, and commenced an action against the Debtor in state court to obtain specific performance of the Agreement of Sale. Before this case could proceed to decision, the Debtor filed the instant bankruptcy case.

Mr. Cicalese conceded that the Buyer had attempted to make certain improvements to the realty in contemplation of the purchase. However, he disputed that these were necessary or in any way enhanced its value, and in fact claimed that they damaged the property.

In his testimony, Mr. Descano indicated that he appraised the property in issue at $412,800.00. We accord this opinion little weight due to Mr. Descano's admitted lack of experience in appraising parking lots and our doubts as to whether the transactions which he deemed comparable, in forming his appraisal, really were an adequate basis for comparison. However, we do find that the recited sale price of $251,-750.00 is less than the realty's value, and the failure of the Buyer to produce any testimony as to value causes us to accept the Debtor's contention, as least on this record, that the fair market value of the premises is at least $300,000.00.

The Buyer presented three (3) arguments in opposition to the granting of this Motion:

1. The Agreement of Sale, having allegedly been fully performed by the Buyer as of the date of the bankruptcy filing, was not an "executory contract."

2. The Agreement "is not burdensome under the business judgment rule," and therefore cannot be rejected.

3. Relief should be denied to the Debtor because he filed his bankruptcy Petition solely to avoid the Agreement, and thus his filing was in bad faith and would unjustly enrich the Debtor at the expense of the Buyer.

Easily the most potentially meritorious of these arguments is the first. As Collier accurately points out, "no attempt has been made to define the term 'executory contract'" in the Code. 2 COLLIER ON BANKRUPTCY, ¶ 365.02, at 365–13 (15th ed. 1986). However, Collier does allow that "the principle of mutuality," i.e., the restriction of the term to only "contracts on which performance remains due to some extent on both sides," is supported by "legislative history." *Id.*

We note that many courts have adopted this definition, usually citing, as its ultimate source, a law review article by the respected bankruptcy scholar, Professor Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN.L.REV. 439, 450–62 (1973). *See, e.g., Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1045–46 (4th Cir.1985); *In re Newcomb*, 744 F.2d 621, 624 (8th Cir. 1984); and *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1348 (9th Cir.1983). *See also*, 2 COLLIER, *supra*, ¶ 365.01, at 365–12 n. 17.

similar conduct causes similar waste of the Court's precious bench time in the future.

However, we note that the general definition of an "Executory contract" is simply "[a] contract that has not as yet been fully completed or performed." BLACK'S LAW DICTIONARY 512 (5th ed. 1979). More significantly, Countryman, in formulating his seminal definition, posits that contracts fully performed by the non-debtor party should not be subject to rejection only because of his observation that, in such a situation, "[t]he estate has whatever benefit it can obtain from the other party's performance and the trustee's rejection would neither add to nor detract from the creditor's claim or the estate's liability." 57 MINN.L.REV. at 451. Therefore, it is apparent that Countryman meant to exempt from the scope of executory contracts only that group of contracts pursuant to which the Debtor has already received the full benefit of the contract from the non-debtor contracting party prior to the bankruptcy filing.

By contrast to the plethora of authority approving the Countryman definition of executory contracts generally, the Buyer can cite to very few cases where, on similar facts, courts have declined requests by debtors to reject executory contracts because the non-debtor has fully performed his obligations pre-petition. In fact, the Buyer cites and relies heavily on but one such case, *In re Murtishi,* 55 B.R. 564 (Bankr.N.D.Ill.1985).

In *Murtishi,* the facts were much the same as in the intant case, i.e., debtor-sellers wished to reject a pre-petition agreement to sell realty. The court there begins with the Countryman definition but takes "this reasoning a step further" and concludes that

> when the debtor has not only failed to perform but has breached the contract pre-petition with the result that the other party has no further duty to perform but rather holds a claim against the debtor, the contract is no longer executory for purposes of section 365. *Id.* at 567.

We believe that this application of the Countryman definition by the *Murtishi* court is erroneous and has been implicitly rejected by several decisions by our local

courts, which are ultimately more persuasive to us than *Murtishi, In re Philadelphia Penn Worsted Co.,* 278 F.2d 661 (3d Cir.1960); *In re Oxford Royal Mushroom Products, Inc.,* 45 B.R. 792 (Bankr.E.D.Pa.1985) (per GOLDHABER, CH. J.); and *In re Middleton,* 3 B.R. 610, 612 (Bankr.E.D.Pa.1980) (per TWARDOWSKI, J.); and elsewhere, *e.g., In re Alexander,* 670 F.2d 885 (9th Cir.1982); *Shaw v. Dawson,* 48 B.R. 857, 860 (D.N.M.1985); and *In re Norquist,* 43 B.R. 224 (Bankr.E.D.Wash. 1984).

As Countryman himself explained, his definition was meant to exclude from its scope only those contracts from which the Debtor's estate had enjoyed the full benefit pre-petition. It is very difficult for us to see what benefit the Debtor's estate has received from a contract like the instant one, which has not actually been performed at all pre-petition.

*Norquist* and *Oxford Mushroom* both expressly reject the application of the Countryman definition to limit contracts within the scope of § 365 of the Code. In fact, Judge Goldhaber embraces the *Norquist* holding that any contract which requires substantial performance, other than payment of money, by *either* party is executory. 45 B.R. at 794.

*Alexander* reaches a result consistent with that urged by the Debtor here on very similar facts, and *Philadelphia Penn Worsted* similarly reaches a consistent result on analogous facts. However, *Alexander,* the only post-Code decision of the two, reaches its result without rejecting the Countryman's definition. Rather, the court concludes that the facts before it do not fit the definition, holding "[t]he contract did not cease to be executory where there was a tender of performance." 670 F.2d at 887. In other words, the *Alexander* court finds that the non-debtor buyer had not "fully performed" simply because he had *tendered,* as opposed to consummated, his required performance. Thus, the non-debtor was held to have not actually accorded any pre-petition benefit upon the Debtor. Applying this reasoning, which we conclude is accurate, it can be observed that this con-

tract would not be excluded from the scope of contracts within the Countryman definition, as explained by Countryman himself in his article. Therefore, it is not necessary for us to go so far as to completely reject the Countryman decision to come to the conclusion urged by the Debtor.

■ We therefore do not believe that the conclusion that the instant Agreement of Sale is an executory contract is inconsistent with Countryman's own statements or with those of any case except *Murtishi*. And, as we indicated above, we cannot follow *Murtishi*. We certainly cannot agree that the fact that a debtor has breached a contract pre-petition renders it non-executory. Most debtors have breached at least some executory contracts pre-petition, and 11 U.S.C. § 365(b) expressly provides them with an opportunity to cure or provide adequate protection to the obligee and retain their contractual rights. To the extent that the *Murtishi* court avoids the absurd result of holding that all contracts breached by a debtor pre-petition are not executory by its qualification that its statement is limited to only contracts where the non-debtor obligee "has no further duty to perform," 55 B.R. at 567, we believe that the court may merely be reciting the clearly-recognized principle that a bankruptcy filing cannot revive a contract that was already terminated pre-petition. *See, e.g., Sudler, supra*, at 787; and *In re Mason, Mason v. Benjamin Banneker Plaza, Inc.*, 69 B.R. 876, 881 (Bankr.E.D.Pa., 1987). *Compare Kendall Grove Joint Venture v. Martinez-Esteve*, 59 B.R. 407 (S.D.Fla.1986) (agreement to sell realty concerning which non-debtor buyer had obtained pre-petition decree of specific performances deemed non-executory).

■ We therefore do not agree that the *Murtishi* court's attempt to limit a debtor's use of the tool of rejection of an executory contract is appropriate. We therefore reject this conclusion; hold that the instant Agreement of Sale of May 22, 1986, *is* an executory contract; and conclude that the Debtor may reject it.

The Buyer presents two other, considerably weaker arguments in support of its contention that this Court should not allow the Debtor to reject the instant contract. The first argument is articulated by the Buyer as the purported principle that "an executory contract may be rejected under § 365 of the Bankruptcy Code if and only if the contract is burdensome under the business judgment rule." Brief of Richard Zeghibe in Opposition to Motion of Debtor to Reject Agreement of Sale with Richard Zeghibe, at 11.

In fact, this is a mis-statement of the applicable rule. As Collier explains, the "business judgment test" is a less demanding standard which has developed as an alternative to the previous standard that only "burdensome" executory contracts could be rejected. *See* 2 COLLIER, *supra*, at ¶ 365.03, at 365–15 to 365–18. *See generally, e.g., N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 524, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984) (ordinary application of "business judgment rule" is not as strict as standard to be applied in considering whether to allow rejection of a collective-bargaining agreement prior to enactment of 11 U.S.C. § 1113).

■ We do not consider the "business judgment test" to be a strict standard to meet. Rather, the test merely requires a showing by the Trustee or Debtor-in-Possession that rejection of the contract will be likely to benefit the estate. *See, e.g., In re Bildisco*, 682 F.2d 72, 79 (3d Cir.1982), *aff'd sub nom. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *Johnson v. Fairco Corp.*, 61 B.R. 317, 320 (N.D.Ill.1986) (standard described as "lax"); *In re Chi-Feng Huang*, 23 B.R. 798, 800 (9th Cir.Bankr.App.1982); *In re Condominium Ass'n of Plaza Towers South, Inc.*, 43 B.R. 18, 21–22 (Bankr.S.D.Fla.1984); and *In re Yellow Limousine Service, Inc.*, 22 B.R. 807, 808 (Bankr.E.D.Pa.1982) (per GOLDHABER, CH. J.).

In applying this standard to the facts here, we note that the implications of the Buyer's second argument are at war with the implications of one prong of his third argument, i.e., that the Debtor will be "unjustly enriched" if it is able to extricate itself from this Agreement of Sale. In the

third argument, the Buyer posits that the improvements which he allegedly made to the premises in contemplation of the consummation of the Agreement of Sale will unfairly benefit the Debtor and its estate. Nowhere does the Buyer purport to refute what his vigorous opposition to the Motion in issue clearly implies: that the contract was very attractive to the Buyer and unattractive to the Debtor. Clearly, the lack of "fairness" to the Buyer in allowing the rejection of the contract is irrelevant, *see, Huang, supra,* 23 B.R. at 800. It is, therefore, clear to us that rejection of the contract in issue will adversely affect only the Buyer, and his otherwise contractual right to acquire a property which we find is worth at least $300,000.00 for $251,750.00. We fail to see where allowing the Buyer to make a "steal of a deal" in acquiring the Debtor's only asset can be said to benefit, in any real sense, anybody except the Buyer.

■ We believe that a debtor-in-possession (hereinafter referred to as "DIP") has great latitude in deciding whether to reject an executory contract and that the court should reject the DIP's judgment only if the low threshold which the DIP must clear to obtain court approval of a proposed agreement to compromise a claim of a creditor via a settlement need be cleared in order to satisfy the "business judgment test." *Compare In re Grant Broadcasting of Philadelphia, Inc.,* (Second Opinion), 71 B.R. 390, 395–96 (Bankr. E.D.Pa., 1987); and *In re Simasko Production Co.,* 47 B.R. 444, 449 (Bankr.D. Colo.1985). Given that the Debtor here is attempting to reject a contract which was very unattractive to it in price, and was entered into it only because of other features which become frustrated because of circumstances

beyond the control of both parties,[2] we cannot say that the decision to reject the Agreement of Sale is, by any definition of the term, a bad business judgment. We would be inclined to refuse a DIP's Motion to reject an executory contract on the ground that it failed the "business judgment test" only if there is some element of insider profit at the expense of the estate (we find insider profit here but no expense of same to the estate) or valid disinterested creditor opposition (which is not present). *See Grant Broadcasting* (Second Opinion), *supra,* at 395–96.

We have already indicated the lack of appeal of the argument of the Buyer that rejection of the Agreement of Sale should be denied because of its adverse consequences to the Buyer. Equally unappealing is the argument that the Motion should be denied because the Debtor is not proceeding in "good faith" in having allegedly filed this case principally for the purpose of rejecting this contract, for several reasons.

■ First is our observation that even the *Murtishi* court, which displays, in our view, an unjustified hostility towards a party standing in the shoes of the Debtor, concedes that "[i]t is not deemed an abuse of the bankruptcy process to file a Chapter 11 Petition solely to reject an executory contract. *In re Bofill,* 25 B.R. 550, 552 (Bankr.S.D.N.Y.1982)." 55 B.R. at 568. We totally agree with this observation.[3] We do not think that the exercise of rights granted to it by the Code by the Debtor constitutes an abuse of bankruptcy. While we believe that proof of malice or serious misconduct or dishonesty on the part of a debtor in its dealings with the bankruptcy court itself would constitute "bad faith," we are not convinced that we should extend

---

**2.** Mr. Cicalese testified that he agreed to the transaction with the Buyer only because he was anticipating that he would personally clear a needed net sum of $60,000.00. This intention was frustrated, per his testimony, when the secured lender on the realty, Continental Bank, demanded a far higher pay-off figure than had been anticipated.

**3.** We also note that a secured creditor of the Debtor, Continental Bank, filed a Motion for Relief from the Automatic Stay against the Debtor on December 22, 1986, which is listed before us for a hearing on April 1, 1987. Although we dismissed this Motion by Order of April 2, 1987, when the Bank failed to appear to prosecute this Motion, this filing suggests that the Debtor may have had the additional motive of preventing a foreclosure in filing its Petition.

the application of this concept far beyond these contours. *Cf. In re Gathright*, 67 B.R. 384, 388, 390 (Bankr.E.D.Pa.1986), *appeal dismissed*, 71 B.R. 343 (E.D.Pa.1987); and *In re Prine*, 10 B.R. 87, 89–90 (Bankr. D.Idaho 1981). We consider moralizations on the Debtor's pre-bankruptcy conduct or motives to be misplaced in our Court. Thus, although we have certain reservations about what the Debtor here hopes to accomplish in this case, as it appears to be solvent and may have to disgorge any advantage obtained at the expense of the Buyer by rejection of the Agreement of Sale in issue in payment of a potential claim for damages for a breach, per 11 U.S.C. § 365(g), we do not consider it our function to second-guess the Debtor's counsel concerning the possible benefits to be attained by the Debtor from this case.

Therefore, we conclude that the Debtor has met its rather light burden of establishing that rejection of the Agreement of Sale in issue is a sound business judgment, we will not rule against the Debtor on any basis that its conduct was in "bad faith," and we will enter an Order granting the instant Motion.