Gary E. CAMERON, as
Trustee, Appellant,

v.

PFAFF PLUMBING AND HEATING,
INC., Rusco Window Company, Moore-
head, Inc., Component Supply, Inc., D
& M Industries, Inc., Edward Lauinger,
dba as F–M Garage Door, Red River
Electric, Inc., Viking Home Improve-
ment, Inc., Appellees.

No. 91–2414.

United States Court of Appeals,
Eighth Circuit.

Submitted December 10, 1991.

Decided June 9, 1992.

Jay D. Carlson, Fargo, N.D., for appel-
lant.

Todd W. Foss, Moorhead, Minn., for ap-
pellee.

Before BEAM, Circuit Judge, HEANEY,
Senior Circuit Judge, and LOKEN, Circuit
Judge.

LOKEN, Circuit Judge.

Gary E. Cameron, as bankruptcy trustee
for Asp Construction Company, appeals the
district court judgment permitting appel-
lees, a group of Asp's creditors, to enforce
a preferential pre-petition assignment of
Asp's right to certain funds. The bank-

ruptcy court permitted the trustee to avoid the assignment as a fraudulent transfer under § 548(a)(2) of the Bankruptcy Code, but the district court ruled for appellees, concluding that Asp had received "reasonably equivalent value" for the assigned funds. Without reaching that question, we hold that the assignment was an executory contract rejected by the trustee under § 365(d)(1) of the Code. Accordingly, we reverse.

## I.

In August 1989, Asp was an insolvent contractor and developer in Fargo, North Dakota. On August 18, the construction lender on Candlelite, an apartment project owned by Asp, obtained a state court judgment of foreclosure on the completed Candlelite properties. A trustee was appointed to collect rents and apply them to the buildings' expenses during the foreclosure redemption period, and to distribute any excess funds to Asp at the end of that period. It is these funds, hereafter referred to as the Excess Redemption Rentals, that are at issue in this lawsuit.

On September 19, 1989, during the redemption period, Asp assigned its future right to the Excess Redemption Rentals to an attorney as escrow agent for appellees, who are approximately one-half of Asp's labor and materials creditors from the Candlelite project. In exchange, this agreement (the "Assignment") provided that Asp would receive a dollar-for-dollar reduction of Asp's existing indebtedness to appellees, to be credited when appellees actually received the Excess Redemption Rentals. Appellees include Pfaff Plumbing and Heating, Inc., whose president, Wilbur Pfaff, then owned 50,000 shares of Asp stock.

On January 6, 1990, Asp filed a voluntary petition for Chapter 7 liquidation, listing $346,000 of assets and $3,069,000 of liabilities. At this time, the Candlelite redemption period had ended, and $48,229.89 of Excess Redemption Rentals had been paid into state court, which now paid these funds into the bankruptcy court. Appellees claimed them under the Assignment,

but the trustee brought this adversary suit to recover them for the estate.

Although the Assignment was obviously inconsistent with the purposes of a Chapter 7 liquidation, in that it would provide appellees with exclusive access to a substantial portion of Asp's estate, it was cleverly devised to survive the trustee's challenge. The Assignment was not avoidable as a preference under § 547(b)(4)(A) because it was made more than ninety days before Asp's petition. It was not avoidable under § 547(b)(4)(B) because Wilbur Pfaff, though an Asp shareholder, was not an "insider" as defined in § 101(31) of the Code. The Assignment also did not appear to be avoidable as a fraudulent transfer because there was no intent to defraud creditors, see § 548(a)(1), and the dollar-for-dollar reduction of Asp's prior debts seemed to provide "reasonably equivalent value" for the funds preferentially assigned, see § 548(a)(2)(A).

Nevertheless, the bankruptcy court agreed with the trustee that the Assignment was a fraudulent conveyance under § 548(a)(2) because Asp did not receive "reasonably equivalent value" in exchange. The district court reversed, concluding that the dollar-for-dollar reduction of Asp's antecedent debts to appellees constituted reasonably equivalent value as a matter of law. This appeal followed. At oral argument, we requested supplemental briefs on the question whether the Assignment is an executory contract rejected by the trustee under § 365 of the Code. We now conclude that it is.

## II.

Section 365(a) permits the trustee to "assume or reject any executory contract or unexpired lease of the debtor," subject to bankruptcy court approval. In a Chapter 7 case, the trustee has sixty days from the filing of a voluntary petition to make this election, after which the executory contract "is deemed rejected." See §§ 301, 365(d)(1). The trustee in this case did not accept the Assignment. If it is an executory contract, it is deemed rejected, and the Excess Redemption Rentals are part of

the debtor's estate. Appellees then have a claim for breach of the Assignment. *See* § 365(g).

■ North Dakota has broadly defined an executory contract as one "the object of which is [not] performed fully." N.D.Cent. Code § 9–01–03. That definition goes far beyond "the purpose for which the trustee is given the option to assume or reject." Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 450 (1973). In defining what is an executory contract under § 365, we are determining whether Congress has empowered the trustee to alter the parties' pre-existing contract rights under state law. We believe that is a question of federal law, for it involves the extent to which Congress has exercised its constitutional power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8, cl. 4; *see Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979).[1] Therefore, we must look beyond the North Dakota statute to determine whether the Assignment is an executory contract for purposes of § 365.

■ The Code does not define the term "executory contract." Under the prior Bankruptcy Act, we defined an executory contract as

'a contract under which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'

*Jenson v. Continental Fin. Corp.*, 591 F.2d 477, 481 (8th Cir.1979), citing Countryman, 57 Minn.L.Rev. at 460, and quoting *Northwest Airlines, Inc. v. Klinger*, 563 F.2d 916, 917 (8th Cir.1977).

The legislative history of § 365 states that the term executory contract "generally includes contracts on which performance remains due to some extent on both sides." S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5844. This statement was quoted approvingly in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). *See also* Lawrence P. King et al., 2 *Collier on Bankruptcy* ¶ 365.02. Though less precise, we conclude that the phrase quoted in *Bildisco*—that "performance remains due to some extent"—is equivalent to the standard we adopted from Professor Countryman in *Klinger* and *Jenson*—that failure to complete the remaining performance "would constitute a material breach." Therefore, at least in this circuit, the term executory contract in § 365(a) represents no change from prior law, and we must decide whether there were material unperformed obligations by both parties to the Assignment when Asp filed its voluntary Chapter 7 petition.

Asp has never performed its most significant obligation under the Assignment—payment of the Excess Redemption Rentals to appellees. Appellees argue that they have no further obligations to perform "with the exception of crediting the debtor's account for the amount of money received." However, this is appellees *only* meaningful obligation under the Assignment, and the fact that the obligation is a simple account crediting does not make its performance any less material for purposes of the Countryman/*Bildisco* standard. *Compare Johnson v. Fairco Corp.*, 61 B.R. 317, 319 (N.D.Ill.1986). We conclude that, until the assigned funds are transferred and that crediting takes place, the contract is truly executory on both sides. This

---

**1.** This court relied on state law in deciding whether an installment land sale contract was an executory contract or a security interest for purposes of § 365 in *Heartline Farms, Inc. v. Daly*, 934 F.2d 985 (8th Cir.1991), *aff'g* 128 B.R. 246, 251 (D.Neb.1990) (Neb. law); *Brown v. First Nat'l Bank*, 844 F.2d 580, 581 (8th Cir.), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 20, 101 L.Ed.2d 971 (1988) (Iowa law); and *In re Speck*, 798 F.2d 279, 280 (8th Cir.1986) (S.D. law). We

do not question the results reached in these cases, and we acknowledge the relevance of state law which addresses whether a particular type of contract is executory. However, the holding that state law governs § 365 issues originated with an agreement to that effect by the parties in *Speck*, and therefore we limit that holding to the installment land sale contracts there at issue.

is confirmed by appellees' description of the agreement in their initial brief: "Asp exchanged a *duty* to pay funds in the future for a *right* to have its debt reduced in the future by the same amount." (Emphasis in original.)

This conclusion is entirely consistent with the purposes of § 365. The Countryman/*Bildisco* standard "was meant to exclude from its scope only those contracts from which the Debtor's estate had enjoyed the full benefit pre-petition." *In re W. & L. Assoc., Inc.*, 71 B.R. 962, 965 (Bankr. E.D.Pa.1987). Here, appellees could have credited some portion of Asp's debts at the time they entered into the Assignment, but they were unwilling to take that risk. Indeed, the day before the Chapter 7 petition was filed, when the redemption period had ended and it was certain there would be Excess Redemption Rentals to distribute, Asp was persuaded to sign a Confession of Judgment in favor of Pfaff Plumbing & Heating for the full amount of Asp's debt to Pfaff. This makes it clear that appellees wanted to obtain a preferential right to the Excess Redemption Rentals without giving up any part of their prior claims against the insolvent Asp.

Enforcing the Assignment would give appellees an unwarranted preference to a significant unencumbered asset. Although the Assignment was carefully timed and structured in an attempt to escape the trustee's powers to avoid preferences and fraudulent transfers, Congress in § 365 gave the trustee another weapon to achieve the broad purposes of the Code, including fairness to creditors. As the court said in *W. & L. Associates:* "We are inclined to interpret § 365 broadly, at least in a debtor's behalf." 71 B.R. at 963.

We therefore conclude that the Assignment is an executory contract within the meaning of § 365(a). Since the trustee did not accept it within sixty days, the Assignment is deemed rejected and the trustee takes the Excess Redemption Rentals for disposition as part of Asp's estate. We do not reach the question whether Asp received reasonably equivalent value for the Assignment.

The judgment of the district court is reversed and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.