**In re Lawrence N. JOLLY, Debtor.**

**CHATTANOOGA MEMORIAL PARK, Plaintiff-Appellant,**

v.

**C. Kenneth STILL, Chapter XIII Trustee, Defendant-Appellee.**

**No. 76–1794.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1977.

Decided April 13, 1978.

Rehearing Denied June 6, 1978.

Allison G. Ulin, Paty, Lawrence & Rymer, Chattanooga, Tenn., for plaintiff-appellant.

Kyle R. Weems, Weill, Ellis, Weems & Copeland, Lawrence R. Ahern, III, Miller, Martin, Hitching, Tipton, Lenihan & Waterhouse, Chattanooga, Tenn., for defendant-appellee.

Before WEICK, PECK and ENGEL, Circuit Judges.

PECK, Circuit Judge.

In 1972, Lawrence Jolly purchased the right to four burial spaces in the Chattanooga Memorial Park and perpetual care and maintenance of the spaces by the Park. Jolly made a downpayment of $40.00, and

financed the balance of $688.80 (including interest), by executing a negotiable instrument promising to pay 48 installments of $14.35 each. The contract included an acceleration clause, providing that in the event of default by the purchaser, the Memorial Park had the option of cancelling the contract and retaining any sums paid as liquidated damages, or declaring the balance under the contract immediately due and payable. While the impact of such clauses is undeniably harsh at times, they are clearly legal and enforceable under Tennessee law, so long as the power to accelerate is exercised under a good faith belief that the prospect of payment has been impaired. Tenn. Code Ann. § 47–1–208.

Jolly was unable to perform the contract, and paid only two installments over the next two years. In 1974, the Memorial Park exercised its option to accelerate, and brought suit on the note seeking the balance due plus attorney's fees (also provided for in the contract). Jolly failed to appear, and a default judgment was entered against him for $880.13 plus costs. Some payments were made toward satisfaction of the judgment, but a few months later, when Jolly filed a Chapter XIII Wage Earner's petition, $761.61 was still owed to the Park.

The Memorial Park filed a claim for $761.61, but the Chapter XIII trustee filed a Trustee's Statement of Executory Contract rejecting the contract, and disputing the amount of the claim. The Bankruptcy Court permitted rejection of the contract, and disallowed Memorial Park's claim. It concluded that there were no damages due Memorial Park, because any damages caused by the rejection were more than covered by the amount already paid. This decision was upheld by the district court.

Chapter XIII Wage Earner's Plans provide debtors with an alternative to straight bankruptcy. Rather than liquidation and discharge, the debtor keeps his assets, and pays his debts entirely through future earnings. While debt repayment is extended, the expectation is that most creditors eventually will be paid off in full. In the mean-time, the debtor avoids the stigma of bankruptcy as well as harassment from worried creditors.

As in Chapter XI Reorganization Plans, a Wage Earner's Plan may include provisions rejecting executory contracts. 11 U.S.C. § 1046(6), Bankruptcy Act § 646(6). Such rejections serve a dual purpose; they relieve the debtor of burdensome future obligations during the period that he is trying to recover financially, and they constitute a breach of the contract, making the other party to the contract a creditor with a claim which may be incorporated into the Plan and ultimately discharged. 11 U.S.C. § 1042, Bankruptcy Act § 642.

The issue to be resolved on appeal is whether the executory contract provisions of Chapter XIII have any application to a contract, like this one, which has already been breached by the debtor and reduced to final judgment. We conclude that they are inapplicable, and that the bankruptcy court was in error in refusing to accept the claim of the Memorial Park.

Congress did not provide the courts with a definition of "executory contracts," except to the extent that a lease is an example. 11 U.S.C. § 1006(5), Bankruptcy Act § 606(5). As many courts and commentators have pointed out, the phrase is meaningless; once a contract ceases being executory, for all practical purposes, it ceases to exist. An example of the difficulty faced by the courts in deciding what Congress intended is the case of *In re National Tile and Terrazzo Co.*, 537 F.2d 329 (9th Cir. 1976). In that case the debtor had purchased some stock, paid for in part with a promissory note. Payments on the note were regularly made until the debtor filed bankruptcy. The majority held that the question as to whether the note was an executory contract within the meaning of the Bankruptcy Act was irrelevant because the note was unenforceable as a matter of law. A concurring opinion insisted that the note was a "classic executed contract," while the dissent argued vigorously that it was executory. A definition frequently used by the courts is "a contract under

which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439, 460 (1973).

Such definitions are helpful, but do not resolve this problem. The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.

Pursuant to a strong Congressional policy of rehabilitating a debtor as effectively as possible by letting in the largest possible number of creditors, the rejection provisions were set up to deal with the problem demonstrated by a longterm lease held by the debtor. It is often clear that the lease will be a burden. The debtor may have no need for it or may simply be unable to pay the rent as it falls due in the future. At the same time, "the holder of an executory contract with the debtor occupies an equivocal position. Until his contract is rejected, he is not a creditor with a provable claim." *In re Greenpoint Metallic Bed Co.*, 113 F.2d 881, 883–884 (2d Cir. 1940). Of course, the concept of a "provable claim" does not apply to a Chapter XIII proceeding, but the reason the claim is not provable in straight bankruptcy is because there is no claim at all—nothing is owed to the other party at the time of the bankruptcy proceeding.

Thus, executory contracts involve obligations which continue into the future. S. Rep. No. 94–458, 94th Congress, 1st Sess. (1975). They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which include an obligation for the debtor to do something in the future. In this case there is no obligation for the debtor to do anything in the future. His duty was in the past, he has breached that duty, and had judgment entered against him for that breach. *Matter of Commodity Merchants, Inc.*, 538 F.2d 1260, 1263 (7th Cir. 1976) ("The bankruptcy trustee no longer seriously argues that the contracts were executory . . . . The purchase contract had already been breached by CMI.").

The fact that part of the purpose of rejection is to reduce the burden on the estate does not change this result. All debts and obligations are burdens on the estate. The mere fact that Jolly might be better off without his burial plots is irrelevant; many Chapter XIII debtors would be better off without the goods and services they overextended themselves to obtain. The only obligations Congress allows debtors to reject are executory ones, and only at the cost of any damages rejection may cause. The choice given a trustee faced with an executory contract is whether breach or affirmance will be of the greatest benefit to the estate. When a contract has already been breached, that choice is no longer available.

A leading bankruptcy authority, interpreting identical provisions under Chapter XI, points out that the rejection provisions have no applicability to a contract which has already been breached, and that "if there was an actual or anticipatory breach of an executory contract by the debtor prior to the commencement of a case under the Act . . . a claim for damages based thereon is provable, and the holder of the claim is an actual creditor." 9 *Collier on Bankruptcy* § 7.15[4.2] at 79. Since this is true, there is no need for the rejection procedures, which create a breach and make the other party a creditor. In this case, not only has there already been a breach, creating a claim, but the claim has already been reduced to final judgment. That judgment, fixing the amount of the claim, is conclusive and may not be collaterally attacked in the bankruptcy court. No suggestion has been made that the state court was without jurisdiction, or that the judgment was obtained through extrinsic fraud or collusion, which would justify disregarding the

prior judgment and redetermining the fact or amount of liability. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

Essentially, what the trustee wants to do here is ignore the fact that there has already been a breach and judgment as to damages on that breach, and start all over with a new breach and new determination of damages. This striking departure from the rules of res judicata is neither expressly permitted under the Bankruptcy Act nor reasonably inferred from its purposes. The Chapter XIII trustee predicts that our decision will undermine the Congressional intent in providing for the rejection of executory contracts. He argues that anyone with an executory contract who wants to evade the rejection procedures can do so simply by obtaining judgment. The argument is without merit. The holder of an executory contract has no cause of action; there has not been a breach and no performance is due from the debtor. If it has been breached, and judgment obtained, the precise goal of the rejection provisions has already been accomplished. The claim has been reduced to money damages which can be included in the Wage Earner Plan and discharged along with the rest of the debtor's obligations. It is no longer an open question whether there might be more equitable, less burdensome means of discharging the debtor on this contract. That has been determined by the state court and cannot be challenged here.

The decision of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.