**In re LOUISVILLE MOTOR EXCHANGE, INC., Debtor.**

**Bankruptcy No. 3–82–01418.**

United States Bankruptcy Court, W.D. Kentucky.

Jan. 13, 1983.

S.J. Stallings and Daniel E. Siebert, Louisville, Ky., for creditor, Jasper Engine & Transmission Exchange, Inc.

John W. Ames and Kenneth L. Wagner, Louisville, Ky., for debtor, Louisville Motor Exchange, Inc.

## MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on the issue of whether there exists an executory contract between the debtor-in-possession and Jasper Engine & Transmission Exchange, Inc. (Jasper). The debtor asserts that an executory contract is in existence between the parties while Jasper, by pleading filed August 4, 1982, specifically denies the existence thereof.

On October 14, 1982, the debtor filed a Plan of Reorganization in which was asserted the necessity of Jasper's continuing to provide supplies to the debtor in order to effectuate a successful plan.

On October 27, 1982, Jasper filed an objection to confirmation of the proposed plan by the debtor insisting that there is no executory contract between Jasper and the debtor. Since the proposed plan of reorganization is in large measure relying for success upon a determination of the existence or nonexistence of an executory contractual relationship between the parties, and in view of the objections of Jasper to the alleged existence of an executory contract, the matter was scheduled for an evidentiary hearing on November 30, 1982, on the issue presented.

On the hearing date, the parties in person and by counsel together with witnesses appeared and gave extensive testimony concerning the relationship between the parties, and by order of December 1, 1982,

were given until December 9, 1982, in which to file simultaneous memoranda of legal authorities on the issue presented.

At this time, the sole issue before the Court, and which of necessity must be resolved before consideration of the proposed plan of reorganization submitted by the debtor-in-possession and the alternative proposed plan of reorganization submitted by Jasper, is the existence or nonexistence of an executory contract by and between these parties on the date of the filing of this petition for relief.

### Findings of Fact

It is agreed that these parties commenced a business relationship in 1952, wherein the debtor began purchasing from Jasper automotive engines and related supplies, and that the relationship continued thereafter in an entirely amicable fashion without benefit of written contract or agreement of any nature until the early 1970's. During this period of infancy for both companies, each prospered and grew totally independent of the other but in large measure as a result of their trust and confidence each in the other. During this time each contributed to the success of the other in ways other than the mere supply and purchase of the engines and materials forming the primary basis of their relationship. The evidence and documents produced demonstrated that while an independent existence was maintained, a pseudo-distributorship relationship prevailed, and that to the outside world, through advertisements and publications a more formalized relationship appeared to exist. It must be noted, however, that between these parties each insisted upon its independence, and that at no time has there existed a written contractual agreement.

In or about 1975, the debtor's account with Jasper, not being maintained on a current basis, a deferred account arrangement was established whereby the total debt to Jasper on a monthly basis would be reduced to the extent of the value of inventory in the debtor's possession, and the balance of that account was then to be maintained on a current basis.

It was also at this time that an influx of new managerial personnel by the debtor resulted in a strained relationship between the parties. The mutual arrangement under which the parties operated consisted of Jasper's supplying the debtor's orders at distributor prices, and the debtor promoting and marketing the sale of Jasper's products through its outlets, neither party being obligated to purchase nor to sell, and the debtor being under no limitation of handling Jasper's products exclusively.

At no time was a demand made by either party for a reduction to written form of the relationship existing between them nor to a recitation of the rights and responsibilities for the continuation of this arrangement. No franchise fees or exclusive territorial rights were required or assigned.

In the period 1980 or 1981, the debtor began purchasing similar products from a competitor of Jasper, and Jasper opened an outlet during this same time frame in the Louisville area which competed at least in part with the debtor. Both thereafter continued to deal under essentially the same arrangement which existed between them prior to these events. The testimony of the debtor's bookkeeper, Beth Kleier, denoted that the deferred account arrangement previously referred to was in existence from approximately 1972 through June of 1982, but that the debtor was not at all times current under that formula, and that in fact the debtor was delinquent on the account.

On June 10, 1982, Jasper advised the debtor that in view of the delinquency existing on the account, further sales could be achieved only by C.O.D. or certified check. Jasper's witness, Mr. Schwenk, Vice President, testified that the letter of June 10, 1982, was not a change in the terms of the credit arrangement between the parties but merely an enforcement of the net 30-day credit terms which had previously existed.

### Conclusions of Law

A comprehensive analysis of the term "executory contract" as used in the bankruptcy context is found in Professor Vern

Countryman's two-part article entitled *Executory Contracts in Bankruptcy,* 57 Minn. L.Rev. 439 (1973) and 58 Minn.L.Rev. 479 (1974). This article concerns executory contracts under § 70b of the Bankruptcy Act, the statutory predecessor to § 365 of the Bankruptcy Code.

Professor Countryman, in analyzing court decisions on the subject of executory contracts in bankruptcy, states that the term does not encompass contracts fully performed by the nonbankrupt party, where the bankrupt party has only partially performed or not performed at all. 57 Minn.L. Rev. 439, 451 (1973). Nor does the term encompass contracts fully performed by the bankrupt party but not fully performed by the nonbankrupt party. 57 Minn.L.Rev. 439, 458 (1973). The term executory contract, however, does cover a contract where the obligations of both parties remain at least partially and materially unperformed at the time of bankruptcy. In other words, an executory contract is one under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. 57 Minn.L.Rev. 439, 460 (1973). See also *In Re Rovine Corp.,* 6 B.R. 661, 3 C.B. C.2d 114 (Bkrtcy.W.D.Tenn.1980).

While the definition of an executory contract is not found in the Bankruptcy Code, the legislative history of section 365 states in part:

"Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is payment. Performance on one side of the contract would have been completed and the contract is no longer executory." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977).

Further, the case of *In Re Jolly,* 574 F.2d 349 (6th Cir.1978), after a thorough analysis of the nature of an executory contract, denotes that:

"... executory contracts involve obligations which continue into the future. S.Rep. No. 94–458, 94th Congress, 1st Sess. (1975). They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which include an obligation for the debtor to do something in the future." Id. at 351.

Section 365, 11 U.S.C., allows the rejection or acceptance of executory contracts with the approval of the Court:

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

*Jolly, supra,* further indicates that when a contract has already been breached, the choice of whether to accept or reject is no longer available, stating:

"A leading bankruptcy authority, interpreting identical provisions under Chapter XI, points out that the rejection provisions have no applicability to a contract which has already been breached, and that 'if there was an actual or anticipatory breach of an executory contract by the debtor prior to the commencement of a case under the Act ... a claim for damages based thereon is provable, and the holder of the claim is an actual creditor.' 9 *Collier on Bankruptcy,* § 7.15[4.2] at 79." 574 F.2d 351.

In a case involving a termination of the dealer-distributor contract arrangement, the Court of Appeals of Kentucky in *Leibel v. Raynor Manufacturing Co.,* 571 S.W.2d 640 (1978), found that a distributorship agreement is in essence a sale of goods, subject to the provisions of the Uniform Commercial Code, and that in order to terminate an on-going oral agreement for the sale of goods reasonable notification is required. The Court found that "reasonable notification" is dependent upon the circumstances of the individual case:

"It is also quite clear that the requirement of reasonable notification does not

relate to the method of giving notice, but to the circumstances under which the notice is given and the extent of advanced warning of termination that the notification gives." Id. at 644.

The Uniform Commercial Code, as adopted in Kentucky, specifically KRS 355.2–309(2), states:

"Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party."

In *Aaron E. Levine and Company, Inc. v. Calkraft Paper Company,* 429 F.Supp. 1039 (E.D.Mich.1976), the District Court, in interpreting section 2–309(2) of the U.C.C. concluded that, while sufficient and reasonable notice of termination depends upon the particular circumstances of the case, "... the cases seem to hinge closely upon the amount of time necessary to enable the distributor to look for a new source of supply." Id. at 1050. Also see *Goodman v. Motor Products Corporation,* 9 Ill.App.2d 67, 132 N.E.2d 356 (1956), and *Smoky Mountains Beverage Co. v. Anheuser-Busch, Inc.,* 182 F.Supp. 326 (D.C.Tenn.1960).

### Memorandum

The debtor urges that notwithstanding the lack of an express written agreement, a "course of dealing," reliances, assurances, and representations may give rise to an executory contract and that such was the relationship between these parties. Debtor further asserts that here there was no specific term, express or implied, for the continuation of the relationship, and that it is therefore terminable at will; that reasonable notice of intent thereof must be given; and that in this instance the reasonable notice period would be that of the duration of the plan of reorganization.

Jasper insists that since neither a duty to buy nor a duty to sell existed, each order placed constituted a separate, distinct and completed transaction and did not thereby give rise to an executory contractual relationship. The creditor further alleges that even if such a relationship did exist, the same was terminated by the breach of the agreement prior to filing by the debtor for Chapter 11 relief or in the alternative that reasonable notice of Jasper's intent to terminate was effectuated by its letter of June 10, 1982.

■ This Court finds that the business relationship here does not fall within the definitional parameters of an executory contract, and thus, it cannot recognize that which does not exist.

■ Even assuming an interpretation of this relationship most favorable to the debtor, which the Court here rejects, the established facts would preclude the debtor from assuming same over the objections of Jasper for the following reasons.

Under *Jolly, supra,* it is clear that a breach of an executory contract thereafter terminates the right of assumption. *Levine, supra,* holds that an executory contract terminable at will requires only reasonable notice for termination. In addition, KRS 355.2–703(f) holds the seller may cancel a contract if the buyer fails to make payments when due.

Here, the breach of contract occurred when the debtor failed to keep the account current. The letter of June 10, 1982, from Jasper to the debtor stating that unless the account was brought current by June 25, 1982, no further deliveries would be made, would constitute notice of termination of the contract. As to the "reasonableness" of that notice, it is generally held to be sufficient where time to seek a substitute arrangement is given, or as defined in *Aaron E. Levine, supra,* that which will "enable the distributor to look for a new source of supply." In the present case, a substitute arrangement or new source of supply was already present, having been achieved at the time that the debtor, without objection by Jasper, took on the Fuller Engine line of products in 1980.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, in view of the foregoing and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that no binding or enforceable executory contract is presently in existence or was in existence between these parties on June 25, 1982, the date of the filing of the petition for relief by this debtor. This is a final order.