In re CONTINENTAL AIRLINES CORPORATION, Continental Airlines, Inc., Texas International Airlines, Inc., TXIA Holdings Corporation, Debtors.

Bankruptcy Nos. 83–04019–H2–5, 83–04020–H1–5, 83–04021–H3–5 and 83–04022–H3–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 12, 1986.

John J. Gallagher, Clinton R. Batterton and Joel M. Cohn, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for Continental Air Lines, Inc., et al.

John O'B. Clarke, Jr. and William J. Birney, Highsaw & Mahoney, Washington, D.C., Jeffrey P. Manners, Houston, Tex., for Intern. Ass'n of Machinists and Aerospace Workers.

Myron M. Sheinfeld and Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., Harvey Miller and Bruce Zirinsky, Weil, Gotshal & Manges, New York City, for Continental Air Lines, Inc. and Texas Intern. Airlines, Inc.

Claude D. Montgomery, Booth, Marcus & Pierce, New York City, for Official Union Labor and Pension Creditors' Committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS' CLAIMS FOR CONTRACT REJECTION DAMAGES, RAILWAY LABOR ACT DAMAGES, AND DUES FOR THE PERIOD FROM AUGUST 13 TO SEPTEMBER 24, 1983

T. GLOVER ROBERTS, Bankruptcy Judge.

### FINDINGS OF UNCONTESTED FACT

1. On September 24, 1983 Continental Air Lines, Inc. and Texas International Airlines, Inc. filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*

2. On September 27, 1983 Continental filed a motion pursuant to Section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a), to reject (a) the collective bargaining agreement between Continental Air Lines, Inc. and the International Association of Machinists and Aerospace Workers ("IAM") executed on September 13, 1979 (effective September 9, 1979); (b) the collective bargaining agreement between Texas International Airlines, Inc. and the IAM executed on January 21, 1982 (effective the same day); (c) Seniority Integration and Fence Agreement dated March 15, 1983 between Continental Air Lines, Inc., Texas International Airlines, Inc., and the IAM; and (d) the Interim Work Rules for IAM represented employees dated August 13, 1983 and September 12, 1983. Continental stated that it believed that the IAM agreements expired prior to the filing of the bankruptcy petition, and that the interim work rules were not an executory contract within the meaning of § 365(a) of the Bankruptcy Code. Nonetheless, Continental requested the Court to reject these agreements and

interim work rules "to whatever extent, if any, [they] have force as an executory contract upon Continental."

3. After a lengthy hearing, on June 27, 1984, this Court entered an Order allowing rejection of Continental's 1979 and 1982 IAM labor agreements, March 15, 1983 Fence Agreement, and August 13 and September 12, 1983 interim work rules "to the extent that [they] have any effect under law."

4. Subsequently, pursuant to an Order of the United States District Court for the Southern District of Texas (dated July 13, 1984), this Court issued Findings of Fact and Conclusions of Law on November 30, 1984, in which the Court held that most of the provisions of the IAM labor agreements expired on August 13, 1983 after the National Mediation Board released the parties from the mediation process and all applicable Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, procedures had been exhausted. Findings of Fact and Conclusions of Law on the Debtors' Motion to Reject Collective Bargaining Agreements Relating to Mechanics and Related Employees at 48, 53. However, this Court found that several provisions of the agreements had not expired because the parties had not bargained to impasse over these specific provisions. Findings at 64–65, 67, 78. These provisions were the (a) Scope Clause as it pertained to Continental's subcontracting of flight kitchen and cabin cleaning work; (b) the Wages Article as it pertained to Continental's reducing the license premium of the former TXI mechanics to equal that of the Continental mechanics; (c) the Severance Pay, Notification of Layoff and Reduction in Force Articles of the IAM labor agreements; (d) and several articles which had been tentatively agreed to during negotiations prior to August 13, 1983.

5. Continental thereafter moved to amend this Court's November 30 Findings and Conclusions. Continental argued that where, as here, an overall bargaining impasse exists, an employer is not limited to implementing only those changes regarding the specific issues which caused impasse, but has the right to put into effect "such modifications of its employee relationships as were reasonably comprehended within its earlier proposals." *NLRB v. Intracoastal Terminal, Inc.*, 286 F.2d 954, 958 (5th Cir.1961); *NLRB v. Tex-Tan*, 318 F.2d 472, 482 (5th Cir.1963); *see Taft Broadcasting Co.*, 163 NLRB 475, 478 (1967), *enforced sub nom. American Federation of Television and Radio Artist v. NLRB*, 395 F.2d 622, 624 (D.C.Cir.1968); *Gulf States Manufacturing, Inc. v. NLRB*, 704 F.2d 1390, 1398 n. 4 (5th Cir.1983).

6. On August 9, 1985, this Court amended its November 30 Findings and Conclusions, finding that Continental had properly subcontracted its flight kitchen and cabin cleaning work, and reduced the license premium of the former TXI mechanics. Amended Findings of Fact and Conclusions of Law in Connection with the Debtors' Motion to Reject Collective Bargaining Agreement Relating to Mechanics and Related Employees at 5–9, 11–12, 17. This Court abandoned its earlier view that it was necessary to bargain to impasse as to each intended change in employment terms before implementing such changes. Rather, this Court held that under the Railway Labor Act an employer can unilaterally implement changes once the employer "exert[s] every reasonable effort" in exhausting the bargaining and mediation procedures contained in section 6 of the RLA as to each intended change.[1] Amended at 1–5, 16–17. This Court found that this standard permitted Continental to implement any change in employment terms that had been actually negotiated between the parties or reasonably comprehended within Continental's pre-August 13 proposals, pro-

---

1. Section 6 provides for notice of intended change in agreements, and prevents change in "rates of pay, rules, or working conditions ... until the controversy has been finally acted upon as required by Section 5 of this Act, by the [National] Mediation Board ..." 45 U.S.C.

§ 156. Section 5 provides that the status quo will continue throughout mediation and for 30 days after the NMB notifies the parties in writing that its mediatory efforts have failed. 45 U.S.C. § 155.

vided, of course, that the parties had exhausted the statutory procedures contained in section 6. Amended at 7, 9, 14. Previously this Court had found that the parties had exhausted all applicable RLA procedures and that "Continental exerted every reasonable effort to make agreements with the IAM during the negotiating period [up to August 13, 1983]." Findings at 17–18 (¶ 47), 19 (¶ 52), 52.

7. On April 30, 1985 the IAM filed its Proof of Claim No. 3 on Its Behalf and on Behalf of Employees It Represents against the Debtors in the amount of $917,376,165. Paragraph 3 of this claim, for $594,996,165, is "for damages arising out of the rejection of [the Debtors'] collective bargaining agreements with the IAM." Paragraph 7, for $9,200,000, is for damages "arising out of the violation of the Railway Labor Act," particularly Continental's closing of its flight kitchens and cabin cleaning stations and the subcontracting of this and fueling service work. Paragraph 8(b), for $60,000, is for "dues which should have been deducted after August 13, 1983 and before September 24, 1983 pursuant to provisions of the collective bargaining agreements."

8. The IAM's claim for contract rejection damages apparently assumes that the terms of the IAM contracts remained in full force and effect from August 13, 1983, the date on which the RLA procedures were exhausted, to September 24, 1983, the date of the bankruptcy filing, and that the terms of the contracts were then rejected by this Court.

9. Similarly, the IAM's claim for Railway Labor Act damages appears to assume that portions of its collective bargaining agreements with Continental remained in effect after RLA procedures were exhausted on August 13, 1983, and that these remaining provisions were improperly changed by Continental after August 13.

10. On August 20 and September 17, 1985, Debtors filed motions to estimate the value of the IAM's claims for contract rejection damages, Railway Labor Act damages, and dues for the period August 13 to September 24, 1983 at zero dollars, and for summary judgment disallowing these claims in their entirety.

11. The IAM contends that the value of its contract rejection and Railway Labor Act claims should not be estimated at zero dollars because (1) resolution of its "contract rejection related claims" requires consideration of federal laws regulating interstate commerce, i.e., Railway Labor Act, 45 U.S.C. § 151 et seq., and that, pursuant to 28 U.S.C. § 157(d), withdrawal of the reference is mandatory; (2) this Court's June 26, 1984 Order authorized the rejection of the IAM contracts "to the extent that [they] have any effect under law," and that this Order alone is controlling in determining the value of the IAM's claims; (3) this Court did not have jurisdiction to enter and amend its November 30, 1984 Findings of Fact and Conclusions of Law because the IAM had previously filed an appeal from the Court's June 26 Order which, according to the IAM, transferred jurisdiction to the District Court; (4) that even if this Court had jurisdiction to enter and amend its November 30 Findings and Conclusions, these findings and conclusions show that certain provisions of the IAM contracts continued in effect after August 13, 1983; and (5) that Continental is liable for the rejection of its August 13, 1983 Interim Work Rules. Response of International Association of Machinists and Aerospace Workers to Motion by Debtors to Estimate Contract Rejection and Railway Labor Act Claims at Zero (Sept. 16, 1985); Motion by International Association of Machinists and Aerospace Workers to Withdraw the Reference Concerning IAM Related Contract Rejection and Labor Protection Claims (May 31, 1985). 50 B.R. 342 (S.D.Tex.1985).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction to resolve on the merits the liability issues presented by the Debtors' motion for summary judgment because the motion does not require direct interpretation or application of the statutory language of the Railway Labor Act or any other federal statute regulating interstate commerce. The ques-

tion rests squarely in the bankruptcy claims adjudication process. Nonetheless, the questions raised regarding the applicability of § 157(d) to this motion for summary judgment have the potential for substantially delaying the closing of this reorganization. For this reason, the Court has determined that it will also estimate the value of the claims subject to this motion pursuant to § 502(c) of the Bankruptcy Code. Order Granting Debtors' Motion to Estimate All Contingent Unliquidated Employee Claims for Purposes of Chapter 11 Plan Confirmation Pursuant to Section 502(c) of the Bankruptcy Code (Sept. 26, 1985). Since estimation is a "core proceeding" and a function within the jurisdiction of the Bankruptcy Court, use of the estimation procedure by this Court will allow the Debtors' Reorganization Plan to proceed without unnecessary or costly delay to the Debtor or creditor groups who may have reached agreement relative to debt repayment. The estimation procedure can, however, be simplified by resolution of the summary judgment issues now on file by the Court's review and adoption of facts previously established in the case and application of the appropriate law to the question now presented.

2. This Court has previously held that it had jurisdiction (a) to decide whether the terms of the 1979 and 1982 IAM labor agreements, and the March 1983 Fence Agreement, expired on August 13, 1983, Findings at 26–29, 37–43, and (b) to issue its August 9 Amended Findings and Conclusions, Amended at 17–18.

3. This Court also had jurisdiction to issue its November 30 Findings and Conclusions. Courts have recognized that the entry of findings and conclusions to support an order or judgment is permissible even after notice of appeal has been filed, and will expedite, rather than interfere with the appellate process. *See, e.g. Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *Johnson v. Heyd,* 415 F.2d 1005 (5th Cir.1969). Here, this Court's November 30 Findings and Conclusions and August 9 Amended Findings and Conclu-

sions provide the necessary factual findings and legal analysis needed to support the Court's June 26, 1983 Order. Furthermore, the District Court ordered that such findings and conclusions be entered, and the Fifth Circuit has denied the IAM's Petition for Writ of Mandamus seeking to prevent this Court from amending its November 30 findings. Finally, the IAM has raised its jurisdictional arguments in its appeal from this Court's June 26 Order and should not be permitted to circumvent the normal appellate process by seeking to have this Court decide the issues raised in its appeal.

4. Section 502(b)(1), 11 U.S.C. § 502(b)(1), provides that a claim against an estate in bankruptcy is to be disallowed if such claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

5. This Court's previous findings, which are adopted herein, make clear that, except for the furlough pay and notice of furlough provisions, all of the terms of the IAM contracts expired on August 13, 1983. This includes those provisions of the contracts which had been tentatively agreed to during negotiations because each of these provisions was opened for negotiation, was the subject of bargaining, and was an integral component of the overall bargaining impasse that existed on August 13. Since the terms of the IAM contracts expired before the bankruptcy petition was filed, the IAM is not entitled to *any* damages for rejection of its contracts under 11 U.S.C. § 365(g). *See Matter of Triangle Laboratories, Inc.,* 663 F.2d 463, 467 (3d Cir.1981); *Gloria Manufacturing Corp. v. International Ladies' Garment Workers' Union,* 734 F.2d 1020, 1022 (4th Cir.1984); *In re Jolly,* 574 F.2d 349, 351 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); 2 Collier on Bankruptcy ¶ 365.02 at 365.14 (15th ed. 1985).

6. Similarly, this Court's previous findings make clear that the March 15, 1983 Seniority Integration and Fence Agreement

was an "interim" agreement, and that the terms of this agreement expired on August 13, 1983 once the bargaining and mediation requirements of the RLA had been exhausted. Findings at 5.

■ 7. This Court has previously found that Continental's August 13 and September 12, 1983 Interim Work Rules ("IWR") were not an executory contract within the meaning of § 365(a) of the Bankruptcy Code, and therefore were not rejected by the Court. Findings at 71–72. Accordingly, the IAM is not entitled to any damages for rejection of the IWR under 11 U.S.C. § 365(g). *See Matter of Triangle Laboratories, Inc., supra; Gloria Manufacturing Corp. v. International Ladies' Garment Workers' Union, supra; In re Jolly, supra,* 2 Collier on Bankruptcy § 365.02, *supra.*

■ 8. This Court has previously found, after reviewing the extensive evidence on the parties' bargaining history, that Continental did not violate the RLA by bargaining in bad faith during the negotiations which preceded the exhaustion of RLA procedures on August 13, 1983. Findings at 19 (¶ 52), 48. Furthermore, there is no evidence to support the IAM's contention that Continental violated the RLA by making "unauthorized unilateral changes" on August 13. This Court had previously found that, with the exception of the furlough provisions which were not changed by Continental after August 13, all of the terms of the IAM contracts expired on August 13. Thus there is no evidence that Continental unilaterally implemented any changes on August 13 which had not been subjected to the statutory procedures of the RLA. Moreover, this Court rejects the IAM's contention that the evidence showing that Continental's pre-impasse proposals would have increased the Company's annual costs, while the August 13 IWR would have reduced such costs by approximately $20 million, somehow demonstrates that the unilateral changes made by Continental on August 13 were improper. Such a result would, in effect, require Continental to implement its "last best offer," a

principle previously urged by the IAM but squarely rejected by this Court. Findings at 65; Amended at 15 ("This Court rejects the 'Last Best Offer' theory proposed by IAM."). Rather, as the Court found, Continental was free to implement any changes that were reasonably comprehended within its pre-August 13 proposals. Therefore there is no basis for the IAM's claim that Continental violated the RLA by improperly changing certain provisions of the IAM contracts on August 13 since all of these changes had been subjected to the bargaining and mediation procedures of the RLA.

■ 9. This Court's prior decisions finding that, with the exception of the furlough provisions which were not changed on August 13 and which were not rejected on September 24, the terms of the IAM contracts and the March 1983 Fence Agreement expired before the bankruptcy filing, and that Continental did not violate the Railway Labor Act are now the law of the case and cannot be collaterally attacked by the IAM in this claim's proceeding. *See Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *Messenger v. Anderson,* 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912); *White v. Murtha,* 377 F.2d 428, 431 (5th Cir.1967).

10. No affidavits or other admissible evidence have been offered to establish that there is a genuine dispute as to any material fact. Because this court is persuaded that Continental is entitled to judgment as a matter of law, summary judgment is appropriate and will be granted. *See* Fed. R.Civ.P. 56(e).

11. For the foregoing reasons, the IAM's claims for contract rejection damages, Railway Labor Act damages, and dues for the period August 13 to September 24, 1983 will be disallowed in their entirety.

12. This Court further rules that the value of the IAM's claims for contract rejection damages, Railway Labor Act damages, and dues for the period August 13 to September 24, 1983 is estimated pursuant to 11 U.S.C. § 502(c) to be zero based on

the Court's conclusion that these claims are ultimately without merit.

These Findings of Fact and Conclusions of Law are hereby incorporated in and made a part of the Order attached hereto. It is so ORDERED and ADJUDGED.