**In re LEVEL PROPANE GASES, INC., et al., Debtors.**

No. 02–16172.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 11, 2003.

Benesch, Friedlander, Coplan & Aronoff, Daniel A. DeMarco, David M. Neumann, Dov Frankel, H. Jeffrey Schwartz, Jeremy Campana, Cleveland, OH, John A. Gleason, Benesch, Friedlander, Coplan & Aronoff, LLP, Columbus, OH, Karen L. Koozer, Kenneth F. Seminatore, Michael D. Zaverton, Robert C. Folland, Thompson, Hine, LLP, Cleveland, OH, for Debtor.

Paul V. Possinger, Jenner & Block, LLC, Chicago, IL, for Petitioning Creditor.

Andrew R. Vara, Saul Eisen seise05, Office of the US Trustee, Daniel M. McDermott, Dean Wyman, Cleveland, OH, for U.S. Trustee.

Eric D. Schwartz, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Robert S. Balantzow, McCarthy, Lebit, Crystal & Liffman, Cleveland, OH, for Creditor Committee.

Robert D. Schwartz, Cleveland, OH, for Debtor and Creditor Committee.

### *ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

The matters before the Court are a Motion For Limited Relief from the Automatic Stay filed by the Equal Justice Foundation, on behalf of the Certified Class of Ohio Residential Customers (Certified Class or Class), and a Motion to Reject a Prepetition Settlement, filed by Level Propane Gases (Debtors). The Court acquires core matter jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 157(a) and (b), 28 U.S.C. § 1334, and General Order Number 84 of this District.

### I.

Prepetition, the Debtors were accused of violating various consumer protection laws in the conduct of their propane gas distribution business. A class action lawsuit was filed against the Debtors in September 1998, styled *Mick et al. v. Level Propane Gases, Inc.*, No. 2–98–959 (S.D.Ohio).

The action was commenced by certain of the Debtors' Ohio residential customers and filed in the United States District Court for the Southern District of Ohio. Subsequent to that filing, the Ohio Attorney General commenced a lawsuit, styled *Attorney General of Ohio v. Level Propane Gases, Inc.*, regarding certain alleged violations of Ohio's Consumer Sales Practices Act.

The Debtors entered in "coordinated and conjoined" settlements with the State of Ohio and the representatives of the class in the *Mick* lawsuit. The settlements provided for reformation of LPG's business practices, prospective compliance with Ohio's consumer protection laws and payment to the Ohio Attorney General in the amount of $250,000. The settlement in the *Mick* lawsuit provides, *inter alia,* payment of certain attorneys fees and expenses and restitution to the Debtors' customers who had purportedly been injured by Debtors' alleged illegal and deceptive trade practices.

On March 18, 2001, the District Court preliminarily approved the *Mick* settlement ("Settlement") between the Certified Class and the Debtors. The Settlement purportedly liquidated the Debtors' liability to the Certified Class enabling recovery thereon and enjoining the Debtors from further violations of law in the conduct of its business. The Settlement Agreement provides that the Debtors will pay $2.2 million into a damages fund for the benefit of the injured class members. This monetary obligation is secured by two third party irrevocable letters of credit issued by the primary creditor in this case, Deutsche Bank Trust Company Americas. Shortly before the final judgment in the class-action case was to enter, an involuntary petition was filed against the Debtors. The Certified Class earlier filed a motion for limited relief from the automatic stay, to proceed to a fairness hearing on the prepetition settlement, which was denied. The Debtors subsequently sought and was granted a conversion to Chapter 11 proceedings. The Certified Class renewed its motion for limited relief from stay so that the District Court could proceed with a fairness hearing. The Debtors responded to the Class' motion by filing the instant motion for an order authorizing it to reject the settlement agreements with the Certified Class.[1]

## II.

The Debtors argue in support of their motion that: (1) the proposed prepetition settlements are unduly burdensome to the propane Debtors' estate; (2) that substantial and material obligations are still to be performed on both sides which makes the settlement an executory contract for purposes of rejection under Section 365 of the Bankruptcy Code.

The Certified Class argues that the settlement is not executory and therefore cannot be the subject of a § 365 rejection. In support of this argument, the Class alleges that all the conditions and obligations have been preliminarily approved by the District Court. According to the Class, the Debtors only remaining obligations are (1) to obey the law and (2) pay restitution according to the settlement terms. To support its objection to the Debtors' rejection motion, the Class avers that a contract is not executory when all that is left to perform is payment of money. Further, the Class argues that any operational burdens placed upon the Debt-

---

1. Debtors also sought rejection of the State of Ohio's settlement. A resolution of this matter has been reached.

ors are moot after the Debtors' motion to sell substantially of its assets was approved.

### III.

The dispositive issue is whether the subject prepetition settlement contract is executory to allow rejection under § 365(a) of the Bankruptcy Code.

### IV.

■ To determine that the Debtors may reject the prepetition settlement under § 365, the settlement must first be a contract. By definition, a settlement is a contract, which is a set of promises between two parties for which the law imposes a duty, and for the breach of which the law supplies a remedy. Black's Law Dictionary, 7th Ed. A basic tenet of contract law is that the agreement must be consensual, in that there must be a meeting of the minds preceded by some type of negotiation process. If the settlement agreement is considered a contract under relevant nonbankruptcy law, it will be a contract in bankruptcy "[u]nless some federal interest requires a different result...." *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ The Class' argument that the settlement has merged into a judicial order and, therefore, is not a contract which can be rejected is without merit. As noted in *In re Columbia Gas System, Inc.*, the Court of Appeals for the Eight Circuit determined:

Although settlement agreements may be judicially approved, they share many characteristics of voluntary contracts and are construed according to traditional precepts of contract construction. In a nonbankruptcy context, we have treated a settlement agreement as a contract...The core of this settlement agreement was consensual obligations.

The parties crafted the agreement and the court approved it...the rights and obligations of the parties do not derive solely from the court's judgment, but depend at least in part on the performance of the other party.

*Enterprise Energy Corporation v. United States (In re Columbia Gas System, Inc.)*, 50 F.3d 233, 237 (3d Cir.1995) (citations omitted). Herein, the prepetition settlement received preliminary approval. The settlement in *Columbia Gas*, was entered as an Order and Final Judgment. Final approval to a class action settlement occurs after the court follows a three step process: First, the court must preliminarily approve the proposed settlement; Second, members of the class must then be given notice of the proposed settlement; and Third, a hearing must be held, after which the court must decide whether the proposed settlement is fair, reasonable and adequate (i.e., the fairness hearing). *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir.1990); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986); *Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983). In this case a fairness hearing has not yet been held, nor has the order and final judgment been entered. Thusly, although approved preliminarily by the district court, as observed in *Columbia Gas*, the subject settlement nevertheless constitutes a contract between the Debtors and the Class.

Next, the settlement must be an "executory" contract to be rejected under § 365. The legislative history of § 365 suggests a broad reading of "executory." Congressional reports stated "[t]hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963,

6303; S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5844. Most courts have agreed that the definition suggested by the legislative history would cut too broadly, "since it is the rare agreement that does not involve unperformed obligations on either side." *Columbia Gas*, 50 F.3d at 237.

■ Section 365(a) of the Bankruptcy Code specifically permits the trustee to assume or reject an executory contract. 11 U.S.C. § 365. "Executory contract" is not a defined term under the Bankruptcy Code. The generally accepted definition of "executory contract"[2] is a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

■ This definition was considered and was found to be helpful but not controlling in the resolution of what constitutes an executory contract in the Sixth Circuit. *See In re Jolly*, 574 F.2d 349 (6th Cir. 1978). In *Jolly*, the Sixth Circuit concluded that when determining whether a contract is executory, the trial court should work backward from an examination of the purposes to be accomplished by rejection and, if they have already been accomplished, then the contract cannot be said to be executory. *Id.* Executory contracts in bankruptcy are best recognized as a combination of assets and liabilities to the bankruptcy estate; the performance the nonbankrupt owes the debtor constitutes an asset, and the performance the debtor owes the nonbankrupt is a liability. *Columbia Gas*, 50 F.3d at 238, *citing* Thomas H. Jackson, The Logic and Limits of Bankruptcy Law 106–107 (1986).

A debtor may elect to assume an executory contract, in which case § 365 mandates that the debtor accept the liability with the asset and fully perform its end of the bargain. 11 U.S.C. § 365(b). Typically, the debtor will assume an executory contract when the package of assets and liabilities is a net asset to the estate. When it is not the debtor will reject the contract. *Id.;* 11 U.S.C. § 365(a).

■ The Class suggests that the Debtors proposed sale of substantially all of its assets renders moot any operational obligations the Debtors have under the settlement, and rejection is, therefore, not available. That argument must fail. The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed. *Columbia Gas* at 239, *citing, Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir.1984) (holding contracts executory at time of petition can be assumed); *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 624 (8th Cir.1984) (stating critical time to be when the petition was filed). Thusly, the date the order for relief was entered, June 6, 2002, is the date for determination of the dispositive issue herein.

## DISCUSSION

■ The Class suggests that its only remaining obligation under the settlement is to attend a fairness hearing and this obligation is a condition and is immaterial. The determination whether a contract term is a promise or condition must be considered on a case-by-case basis. The Debtors controvert that argument stating that the Class must also execute releases. The Debtors allege it was the parties' intent that the releases constitute full and

**2.** Countryman, V. in Executory Contracts in

Bankruptcy, Part I, 57 Minn. L.Rev. 439, 460.

complete general release of claims as permitted by law and the express language of the settlement. In this regard, the Debtors contend the releases are the principal obligation of the Class and constitute the overriding contractual consideration bargained for by the Debtors.

The language of the settlement provides that the Class was to provide "general releases" in consideration of payment of restitution by the Debtors and certain injunctive provisions placed upon the Debtors. Section 7 of Exhibit 1, on page 7, of the agreement states:

> Within ten (10) business days of the Effective Date of the Settlement[3], Plaintiffs, in their individual capacities and as representatives of each class member, as well as their past, present, and future heirs, executors, administrators, agents, representatives, predecessors, successors and assigns, and any other person or entity who may assert a claim by or through any of them, or otherwise claims for any of them or on their behalf ("Releasing Parties"), in jointly or severally, shall release all Settled Claims through a full and complete a general release in favor of Defendant, its affiliate corporation, parent corporations, and/or their shareholders, employees, corporate directors, corporate officers, partners, principals, agents, attorneys, representatives, successors, and assigns (the "Released Parties") by executing and delivering to Defendant's counsel the Release in the form attached hereto as Exhibit D.

Section 2 of Exhibit 3, on page 2, of the proposed Order and Final Judgment states:

> "Settled Claims" means (a) any and all claims that any of the Plaintiffs or any Class member or members have or may have against the Released Parties from the beginning of the world to the Effective Date of the Stipulation of Settlement (as defined in paragraph 3 thereof); (b) any and all claims that were or could have been asserted in the Amended Complaint, whether known or unknown, suspected or unsuspected, at the time of the Effective Date of the Stipulation of Settlement; . . .

■ In order to determine the materiality of the class' obligations, basic contract principles should be considered. There is a distinction in the law between failure of a condition and a breach of a duty: "Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur." *Columbia Gas, supra, citing,* Restatement (Second) of Contracts § 225(3) (1981). This distinction between a condition and a duty (or promise) is important. The Restatement makes clear that while "a contracting party's failure to fulfill a condition excuses performance by the other party whose performance is so conditioned, it is not, without an independent promise to perform the condition, a breach of contract subjecting the nonfulfilling party to liability for damages." In the present matter, if the remaining obligations in the contract are mere conditions, as opposed to duties, then the contract cannot be executory for purposes of § 365 because no material breach could occur. *See id.,* 50 F.3d at 240 (citations omitted).

■ It is quite evident that the Class' obligation to execute releases is material. This is specifically what the Debtors bargained for. Without such releases, there would be no sound reason for the Debtors

---

**3.** The Effective Date is the date upon which the Order and Final Judgment, after having been entered, is no longer subject to review (or no earlier than 30 days after entry of the Order and Final Judgment). *See* Exhibit 1, page 5, ¶ 4.

to be amenable to the monetary obligations and the "operational burdens." The Debtors' obligations exceed merely obeying the law as suggested by the Class. The testimony in this regard of Steve Sues, on behalf of the Debtors, was uncontroverted and was generally credible.

Sues testified that the settlement enjoined the Debtors from charging for certain services where its competitors could charge for the same under applicable law. For instance, the Debtors were enjoined from charging for removing tanks and under-utilization; were required to advertise in ways not proscribed by the Consumer Sales Practices Act; had to make repairs within five (5) business days no matter the extent of repair required; the Debtors had to draft and enter into a four-page contractual agreement with customers within 72 hours, although the industry standard was a one page contract with no time limits; and the settlement was binding on its successors. (Sues, Direct). Such provisions, not even including the monetary obligations, constitute the unperformed and material obligations of the Debtors.[4]

Herein, the Debtors have set forth a sound business judgment for seeking rejection of the settlement within the authority of § 365 of the Bankruptcy Code. The Settlement is an executory contract. The former General Counsel for the Debtors, supported this assessment on cross-examination (Salvagni, Cross). He believed the settlement was not fair postpetition because he wanted to maintain as many assets as possible. *Id.* Moreover, he even considered "filing something to reject the settlement." *Id.*

### CONCLUSION

Accordingly, the Debtors' motion to reject said prepetition settlement is hereby granted. Having so determined, it is unnecessary to give further consideration to the Certified Class' limited motion for relief from stay to proceed to a fairness hearing as it is rendered moot. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

---

4. The Debtors were required to pay, among other things, $315,000 in attorney fees to the Class' counsel; $40,000.00 in litigation expenses and costs; $60,000.00 to certain plaintiffs in the Mick action; and $2.2. million in to a Rule 23(b)(3) fund.